### DEROUIN v. DIRECTOR OF WORKMEN'S COMPENSATION DEPARTMENT

1. WORKMEN'S COMPENSATION—SECOND INJURY FUND—DIFFERENTIAL BENEFITS.

The obligation to pay differential benefits from the second injury fund so as to increase workmen's compensation benefits to persons receiving benefits at the former statutory level to the current statutory level is imposed on the second injury fund by law (MCLA § 412.9).

2. WORKMEN'S COMPENSATION—SECOND INJURY FUND—DIFFERENTIAL BENEFITS.

The obligation imposed by statute on the second injury fund to pay differential benefits to persons entitled to them is a responsibility separate and apart from the liability of the employer, once the employer's liability has been established in proceedings before the workmen's compensation department (MCLA § 412.9).

3. WORKMEN'S COMPENSATION—SECOND INJURY FUND—DIFFERENTIAL BENEFITS—REDEMPTION.

The obligation of the second injury fund to pay differential benefits to a person entitled to receive them is not terminated by a redemption agreement by which the employer's liability is terminated.

---

REFERENCE FOR POINTS IN HEADNOTE

[1-3] 58 Am Jur, Workmen's Compensation § 296.

Original action in the Court of Appeals. Submitted Division 2 May 9, 1969, at Detroit. (Docket No. 4,864.) Decided October 1, 1969.

Complaint by Victor Derouin against Weldon O. Yeager, director of the Workmen's Compensation Department, and Allison Green, State Treasurer, for a writ of mandamus to compel payment of benefits from the Second Injury Fund. Writ issued.

*Goodman, Eden, Robb, Millender, Goodman & Bedrosian,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John J. Long,* Assistant Attorney General, for defendants.

Before: HOLBROOK, P. J., and McGREGOR and BRONSON, JJ.

HOLBROOK, P. J. This is an original action in mandamus brought by plaintiff Victor Derouin, against defendants, director of the workmen's compensation department and the State treasurer, to compel payment of differential benefits from the Second Injury Fund for the balance of 800 weeks as ordered by a referee of the workmen's compensation department.

Plaintiff-employee claimed for injuries occurring in 1963 and 1964 against two employers and filed a request with the workmen's compensation department for a determination of his claim for benefits. A referee filed decision No. 1 on April 18, 1966, ruling that plaintiff received a personal injury arising out of and in the course of his employment by the employers on September 1, 1963, and February 1, 1964, and ordered the employers and their

carriers to pay plaintiff $36 per week for 800 weeks from February 2, 1964. The referee also included in decision No. 1 the further order stated in the footnote.[1]

The referee filed decision No. 2 on the same day reciting therein the same injuries of plaintiff, earnings and employee-employer relationships, and further stated therein as follows:

"It is further ordered that plaintiff suffered the permanent and total loss of industrial use of both legs and both arms as of Feb. 9, 1964, and the State of Michigan Second Injury Fund shall pay additional benefits to those awarded against Zurich Ins. Co. and Liberty Mutual Ins. Co. by Decision #1 contemporaneously issued from Sept. 1, 1965 to the present time and continuing for a period of 800 weeks from the date of injury in accordance with the provisions of Part II, § 9(a) of the Workmen's Compensation Act."

Subsequent to the filing of these two decisions and orders an agreement to redeem the employers' liability in the case was presented to the referee and after a hearing it was approved and an order filed.

The Second Injury Fund paid plaintiff the sum of $15.89 per week from September 1, 1965, to May 3, 1966, and has, since that date to the present time, refused to pay plaintiff any additional benefits.

Defendants' refusal to make further payments in accord with the referee's order is based upon their

---

[1] "It is further ordered that plaintiff suffered the permanent and total loss of industrial use of both legs and both arms as of Feb. 9, 1964.

"I further find that the hospital, medical and rehabilitation care which plaintiff received from 2–1–64 to the present time was not the result of the injury herein found but resulted from a cervical spondylosis or degenerative changes both unrelated to his injury or to his employment."

claim that the liability of the Second Injury Fund
under part 2, § 9 subd (a)[2] of the workmen's com-
pensation act is terminated when under § 22[3] of
that act the employers' liability is redeemed.

MCLA § 412.1 (Stat Ann 1968 Rev § 17.151) pro-
vides for compensation to be paid certain employees
and reads in part:

"An employee, who receives a personal injury
arising out of and in the course of his employment
by an employer who is at the time of such injury
subject to the provisions of this act, *shall be paid
compensation in the manner and to the extent here-
inafter provided,* or in case of his death resulting
from such injuries such compensation shall be paid
to his dependents as hereinafter defined." (Em-
phasis supplied.)

---

[2] As amended PA 1965, No 44, which reads in part:
"*Any permanently and totally disabled person as defined in this
act who, on or after June 25, 1955, is entitled to receive payments
of workmen's compensation under this act in amounts per
week of less than is presently provided in the workmen's compensation
schedule of benefits for permanent and total disability and for a
lesser number of weeks than the duration of such permanent and total
disability shall after the effective date of any amendatory act,* by
which his disability is defined as permanent and total disability or
by which the weekly benefit for permanent and total disability is
increased, *receive weekly, without application, from the second injury
fund, an amount equal to the difference between what he is now or
shall hereafter be entitled to receive from his employer under the
provisions of this act as the same was in effect at the time of his
injury and the amount now provided for his permanent and total
disability by this or any other amendatory act.*" (Emphasis supplied.)
MCLA § 412.9 (Stat Ann 1968 Rev § 17.159).

[3] "Whenever any weekly payment has been continued for not less
than 6 months, the liability therefor may be redeemed by the payment
of a lump sum by agreement of the parties, subject to the approval of
the compensation commission, and said compensation commission may
at any time direct in any case, if special circumstances be found
which in its judgment require the same, that the deferred payments
due under this act be commuted on the present worth thereof at 5%
per annum to 1 or more lump sum payments, and that such payments
shall be made by the employer or the insurance company carrying such
risk, or commissioner of insurance." MCLA § 412.22 (Stat Ann 1968
Rev § 17.172).

o

MCLA § 412.8a (Stat Ann 1968 Rev § 17.158[1])[4] made provision for the Second Injury Fund and provided in part:

"Payments shall be made into the second injury fund in the following manner. Whenever the balance in the second injury fund falls below $100,000-.00 the director of the department shall assess each insurance carrier including the state accident fund and each self-insured employer 1/2 of 1% of the total annual compensation benefits, excluding medical payments, paid by the insurance carrier, state accident fund and self-insured employer during the preceding calendar year. * * * Such sum shall be paid into the state treasury of this state *to be held as a second injury fund and applied solely to the payment of compensation as hereinafter prescribed in this act."* (Emphasis supplied.)

Part 2, § 9 subd (a) of the act provides for the disbursement of payments from the Second Injury Fund. Although payment from the fund is dependent in the first instance upon the employee being a permanently and totally disabled person, as defined in the act, who on or after June 25, 1955, is entitled to receive payments of workmen's compensation, once these facts are determined affirmatively, the Second Injury Fund is required to pay the increased benefits as stated in the act.

In this case we have two separate orders of the workmen's compensation department: the first ordered the carriers of the employers to pay the employee $36 per week for 800 weeks, and the second ordered the Second Injury Fund to pay the employee the difference between the rate payable at date of injury and the increased rate provided under the amendment to the act, PA 1965, No 44.

---

[4] This section was repealed by PA 1968, No 227, which created a new Second Injury Fund but continued benefits to which persons were entitled under prior law.

The employers and their carriers, by the redemption agreement duly approved by the department, terminated the employers' liability as such, but the employers did not have at the time any direct liability for the payments ordered to be made by the Second Injury Fund.

The defendants assert that decision No. 2 of the referee was stipulated to by counsel for the Second Injury Fund, and that, had counsel been informed of the intention of the employers and employee to present a redemption agreement for the department's approval, he would not have consented to the entry of the order. This claim is contested by the plaintiff herein. No one disputes the fact that the employee suffered permanent and total loss of the industrial use of both arms and both legs and was entitled to both orders for compensation. In fact the Second Injury Fund stopped its payments to the employee within 15 days after the redemption order was entered, but did not ask for a rehearing nor did it appeal the matter.

The merit of an injured employee's claim should control the orders to be issued by the workmen's compensation department. We conclude that the employee's claims herein were meritorious and that the orders entered were proper and justified.

In support of defendants' position that entitlement to payments from the Second Injury Fund ceases when employers or their insurance carriers redeem their liability, they assert the claimed administrative interpretation of the act since 1955 when differential benefits were first provided. This interpretation, they state, has been to consider payments from the Second Injury Fund to terminate upon redemption of compensation by the employer or the insurance carrier. They cite *Magreta* v. *Ambassador Steel Company* (1968), 380 Mich 513,

and *Roosevelt Oil Company* v. *Secretary of State* (1954), 339 Mich 679, as authority for their position and particularly the quotation appearing on pp 693, 694 of the *Roosevelt Oil Co. Case, viz.:*

"We have repeatedly held that the practical construction given to obscure statutes by administrative officers will be given weight by the court in construing such a statute. *Board of Education* v. *Goodrich* (1920), 208 Mich 646; *Commerce-Guardian Trust & Savings Bank* v. *State of Michigan* (1924), 228 Mich 316; *People* v. *Robinson* (1928), 241 Mich 497. As stated by the United States Supreme Court in the case of *United States* v. *Jackson* (1930), 280 US 183, 193 (50 S Ct 143, 74 L Ed 361):

" 'It is a familiar rule of statutory construction that great weight is properly to be given to the construction consistently given to a statute by the executive department charged with its administration. * * * And such construction is not to be overturned unless clearly wrong, or unless a different construction is plainly required.' "

Plaintiff asserts that the claimed interpretation of the act by the defendant as to liability of the Second Injury Fund is not substantiated in the record by cited opinions, decisions, or the rules of the workmen's compensation department. We agree for we have not been made aware of the claimed interpretation *other than the making of the claim by defendants.* We also conclude that the act in question is not *obscure* to the extent that the intent of the legislature cannot be understood from the language used.

Had the legislature desired to effect the interpretation now placed upon the act by the workmen's compensation department it could have easily made provision for it by stating it in simple language.

At first reading the case of *Wehmeier* v. *W. E. Wood Company* (1966), 377 Mich 176, would seem

to support defendant's position; however, upon reflection it appears inapplicable. *Wehmeier* involved further medical expenses which under the act *were the original and direct liability of the employer,* and the Court therein ruled that these were included in the redemption agreement between the employer and employee which was approved by the department.

We now turn to the recent case of *Rasar* v. *Chrysler Corporation* (1969), 382 Mich 169, for further enlightenment. Mr. Justice KELLY stated therein on pp 170, 171, 175:

"Plaintiff received weekly compensation benefits from defendant-appellant, Chrysler Corporation, until 500 weeks from the date of his injury, July 6, 1955.

"March 3, 1965, plaintiff filed an application for hearing and adjustment of claim for benefits for permanent and total disability due to the loss of industrial use of both arms. * * *

"The workmen's compensation appeal board held that plaintiff suffered the loss of industrial use of both arms on February 12, 1958, and found that plaintiff was entitled to the benefits provided by PA 1956, No 195, and that payment of said benefits was the obligation of Chrysler Corporation. The second injury fund was held liable for increases in weekly benefits that were enacted by PA 1965, No 44. * * *

"In this appeal, Chrysler Corporation advances two reasons why the decision of the workmen's compensation appeal board should be reversed: (1) the legislature by enacting amendments to part 2, § 9, of the workmen's compensation act by PA 1956, No 195 and PA 1965, No 44, has clearly shown its intent to place the burden for enlarged benefits after the date of injury in permanent and total disability cases solely upon the second injury fund; and (2) the retrospective application of PA 1956,

No 195, to Chrysler Corporation deprives Chrysler of its constitutional rights. * * *

"We agree with appellant Chrysler Corporation's contention that the legislature has made it perfectly clear that when the loss of use classification was added to part 2, § 10, it was the intention of the legislature that 'payments of benefits for the newly defined loss of use permanent and total disabilities were to be from the second injury fund so that the burden of the change could be spread among all employers.' "

We determine that the department's order requiring the Second Injury Fund to make payments to plaintiff in accord with the act is a responsibility separate and apart from the liability of the employer, once that liability has been established in the proceedings before the workmen's compensation department.

Plaintiff herein requests a writ of mandamus requiring the defendants to honor the order of the department to pay to plaintiff the sums stated therein. The rules concerning mandamus are stated in the case of *Toan* v. *McGinn* (1935), 271 Mich 28, 34, as follows:

"To support mandamus, plaintiffs must have a clear legal right to performance of the specific duty sought to be compelled; defendants must have the clear legal duty to perform such act; and it must be a ministerial act, one 'where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.' 38 CJ p 598. See, also, *Globe Indemnity Co.* v. *Richer* (1933), 264 Mich 224; *Sezor* v. *Proctor & Gamble Soap Co.* (1934), 267 Mich 128."

It is our opinion that plaintiff herein has satisfied the requirements for the issuance of a writ of mandamus.

A writ of mandamus may issue against defendants requiring them to pay from the Second Injury Fund the payments ordered to be paid by the department's order, decision No. 2 of April 18, 1966.
Costs to plaintiff.
All concurred.