WHITE v WEINBERGER BUILDERS, INC
BOYKO v CHRYSLER CORPORATION
MOORHOUSE v J D CANDLER ROOFING COMPANY, INC
PITTS v DAVISON-LINWOOD STANDARD STATION

1. WORKMEN'S COMPENSATION—SECOND INJURY FUND—PURPOSE.

The primary purpose of the Second Injury Fund as created by the Workmen's Compensation Act is to enhance the prospects of employment of certain handicapped persons who had previously sustained specific losses.

2. WORKMEN'S COMPENSATION—SECOND INJURY FUND—DIFFERENTIAL AND ADDITIONAL BENEFITS—REDEMPTION.

A former statute providing for differential and additional benefits payable from the Second Injury Fund is clearly to the effect that a claimant must be entitled to receive payments of workmen's compensation under the Workmen's Compensation Act in order to receive such benefits, and no provision is made for those who might have been entitled to receive payments had they not redeemed their claims (MCLA 412.9[a]).

3. WORKMEN'S COMPENSATION—SECOND INJURY FUND—DIFFERENTIAL AND ADDITIONAL BENEFITS—REDEMPTION—EMPLOYER LIABILITY.

The establishment of employer liability, either by admission or adjudication prior to redemption, is an absolute prerequisite to Second Injury Fund liability for differential and additional workmen's compensation benefits.

4. WORKMEN'S COMPENSATION—SECOND INJURY FUND—REDEMPTION—STATUTES—CONSTRUCTION.

Argument that the Legislature specifically provided that redemption of liability with the employer or carrier eliminates all liability of the Silicosis and Dust Disease Fund and that failure to make the same provision for the Second Injury Fund shows the intent of the Legislature to make the latter fund's liability separate and independent is not supported by legislative history which shows that the reference to redemption in the Silicosis and Dust Disease Fund statute reflects a legislative change of mind from a prior provision about the desirability of the fund having a liability apart from that of the employer where there has been a redemption (MCLA 417.5, 418.545).

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 58 Am Jur, Workmen's Compensation § 296.

Appeals from the Workmen's Compensation Appeal Board. Submitted Division 1 April 5, 1973, at Detroit. (Docket Nos. 14927, 14932, 15060, 15118.) Decided September 24, 1973. Leave to appeal applied for.

John B. White, John Boyko, Hansel O. Moorhouse, and Roosevelt Pitts sought workmen's compensation benefits from the Second Injury Fund after redemption of liability with their respective employers and their insurers: Weinberger Builders, Inc., and Midland National Insurance Company; Chrysler Corporation; J. D. Candler Roofing Company, Inc.; and Davison Linwood Standard Station, Citron Oil Company, and Travelers Insurance Company. Benefits denied. Plaintiffs appeal. Affirmed.

*Lopatin, Miller, Bindes & Freedman (Michael H. Feiler,* of counsel), for plaintiff John B. White.

*Rothe, Marston, Mazey, Sachs, O'Connell, Nunn & Freid, P. C.,* for plaintiff John Boyko.

*Sharples, Klein & Gale,* for plaintiff Hansel O. Moorhouse.

*Kelman, Loria, Downing & Schneider,* for plaintiff Roosevelt Pitts.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *A. C. Stoddard* and *David J. Watts,* Assistants Attorney General, for the Second Injury Fund.

*Amicus Curiae: McCroskey, Libner, Van Leuven, Kortering, Cochrane & Brock (Timothy J. Bott,* of counsel).

Before: V. J. BRENNAN, P. J., and DANHOF and BASHARA, JJ.

DANHOF, J. These four workmen's compensation cases have been consolidated for appeal. At issue is the potential liability of the Second Injury Fund in cases where an alleged employer has neither admitted liability under the act, nor been adjudicated liable, but rather where liability has been redeemed pursuant to the first provision of MCLA 412.22; MSA 17.172, currently MCLA 418.835; MSA 17.237(835). Plaintiffs appeal from decisions of the Workmen's Compensation Appeal Board which hold that liability of the Second Injury Fund is derivative from that of the employer, so that the fund cannot be subjected to a separate, independent hearing as to liability for differential payments once the employer's alleged prospective liability has been redeemed via a negotiated settlement.

For the factual circumstances out of which these disputes arose, we have drawn extensively from the four opinions of the Workmen's Compensation Appeal Board.

John B. White was a race driver who was injured on June 14, 1964 while driving one of defendant Weinberger's vehicles at Terre Haute, Indiana. His injuries included partial severing of the spinal cord, leaving him described by medical testimony as a tetraplegic. There was strong disagreement over his actual employment status at the time of his injury and defendant and its insurer never admitted to liability. No voluntary compensation was paid until a redemption agreement was reached in the amount of $75,000. This was paid in the form of a six-month "jurisdictional payment" in the amount of $1,539 at the time of the redemption hearing, with the balance paid

subsequent to the approval by the referee and director of the bureau. The record reveals that plaintiff was completely aware of his options before the redemption was consummated. Plaintiff and his counsel made clear their intent to proceed against the fund for additional benefits, but plaintiff acknowledged that he would be willing to redeem for the stated sum regardless of the outcome of his pending claim against the fund. No hearing on the merits of plaintiff's claim against defendant Weinberger was ever held, nor was any decision ever entered in that regard.

John Boyko was injured when struck in the back by a hi-lo truck on October 19, 1957 and has not worked since November 14, 1957. Defendant Chrysler Corporation voluntarily paid total disability weekly benefits to the end of the statutory 500-week period. Plaintiff Boyko then petitioned for permanent and total disability, claiming loss of industrial use of both legs. The claim was denied by Chrysler. A redemption was entered into between plaintiff and Chrysler in the amount of $5,400 and was approved by the referee. The Second Injury Fund was dismissed as a defendant "without prejudice to plaintiff's right to re-file against said defendant in the future".

Hansel O. Moorhouse fell from a ladder while in the employment of defendant Candler Company, at age 70, on September 11, 1956. His injury was reported as "severe spinal injury", and voluntarily weekly benefits were paid for 500 weeks. At the end of this period, plaintiff petitioned for permanent and total disability based on the loss of industrial use of his legs. A redemption of defendant firm's prospective liability was approved by the referee in the amount of $5,000. No proofs were taken on the claim of loss of industrial use.

The record reveals that plaintiff and counsel intended to proceed against the Second Injury Fund subsequent to the redemption, but were also aware that the redemption involved possible waiver of plaintiff's right to proceed against the fund.

Roosevelt Pitts froze the fingers of both hands while working for a gas station on January 1, 1968 in sub-zero weather. This resulted in amputations through the middle phalanges of the four fingers of the left hand and through the middle phalanges of the index and middle fingers of the right hand. No weekly benefits were paid because of a lack of insurance being carried by the gas station proprietor, and because there was (quoting plaintiff's brief) "substantial question as to whether the Citron Oil Company was a statutory employer within the meaning of Section 10(a) of Part I of the Workmen's Compensation Act", formerly MCLA 411.10; MSA 17.150, currently MCLA 418.171; MSA 17.237(171). The liability of defendant gas station and defendant oil company was redeemed for $9,000 in an action approved by the referee. Plaintiff's counsel stated on the record at the redemption hearing that he believed "there is a good chance of perhaps collecting benefits from the second injury fund even though this Redemption is approved". Plaintiff thereafter petitioned for benefits from the fund, claiming loss of industrial use of both hands.

Plaintiffs make the following arguments in support of their contention that the redemptions agreed to should not foreclose a hearing on the merits of their claim against the Second Injury Fund. (1) Since the Silicosis and Dust Disease Fund specifically now states that redemption of liability with the employer or an insurance company shall remove all liability of this fund, failure

to so specify in the Second Injury Fund sections of the statute should be interpreted to mean that redemption does not effect that fund's liability; (2) That there is no jural identity between the employer and the Second Injury Fund; (3) That the fund's liability is not based on the contract between the employer and the employee, but is based solely on the employee's status as a totally and permanently disabled person.

The Attorney General on behalf of the Second Injury Fund contends that the fund's differential payments to the totally and permanently disabled were intended as a supplement to basic compensation payments, not as a substitute for them; that the fund is liable for differential payments only if the employer's liability for total and permanent disability benefits has been established through admission or adjudication. Finally the Attorney General points out that the long standing practice of the fund has been to adopt whatever position the employer/carrier adopted whether it be to pay voluntarily, to defend, to appeal, or not to appeal; that the fund's passive-derivative role is to the advantage of claimants who are thereby spared the financing and delay of two trials, one with the employer/carrier and the other with the fund, before receiving the full benefits under the act.

The primary purpose of the Second Injury Fund, one not involved in this appeal, is to enhance the prospects of employment of certain handicapped persons who had previously sustained specific losses. *Verberg v Simplicity Pattern Co,* 357 Mich 636, 643; 99 NW2d 508, 512 (1959); *Whitt v Ford Motor Co,* 383 Mich 726, 730–731; 178 NW2d 917, 919 (1970); 2 Larson's Workmen's Compensation Law, § 59.31 *et seq.*

The statutory source of the fund's liability for

differential and additional benefits is contained in
MCLA 412.9(a); MSA 17.159(a) and read at the
time of White's, Boyko's, and Moorhouse's injuries
as follows:

"Any permanently and totally disabled person as
defined in sections 8a and 10 who, on or after June 25,
1955, is entitled to receive payments of workmen's
compensation under this act in amounts per week of
less than is presently provided in the workmen's com-
pensation schedule of benefits for permanent and total
disability and for a lesser number of weeks than the
duration of such permanent and total disability shall
after the effective date of this amendatory act receive
weekly, without application, from the second injury
fund, an amount equal to the difference between what
he is now receiving per week and the amount per week
now provided for permanent and total disability with
appropriate application of the provisions of paragraphs
(b), (c), (d) and (e) of this section since the date of injury.
Payments from this second injury fund shall continue
after the period for which any such person is otherwise
entitled to compensation under this act for the duration
of such permanent and total disability according to the
full rate provided in the schedule of benefits."

The intent of the statute would seem to be clear,
*i.e.,* to protect the totally and permanently dis-
abled employee who is entitled to compensation
under the act from inflation by passing on legisla-
tive improvements in benefits without assessing a
single employer for benefits not in effect at the
time of injury. *Rasar v Chrysler Corp,* 382 Mich
169, 175; 169 NW2d 303, 306 (1969). Although the
wording of the statute was slightly different at the
time of Pitts's injury, none of the parties contend
that the issue should turn on this variation.
Rather, our task is to determine whether the long-
standing practice of making the fund's liability

derivative is reasonably grounded in the plain meaning of the statute.

The redemption agreements in all four cases were voluntary compromises entered according to the first provision of MCLA 412.22; MSA 17.172, as opposed to lump-sum advances under the second provision, and were final settlements of all liability under the act of the respective employers and their carriers. *Wehmeier v W E Wood Co,* 377 Mich 176, 185, 189; 139 NW2d 733, 737 (1966). The voluntary weekly benefits paid to Boyko and Moorhouse, the jurisdictional payments to White and Pitts, and the amounts under the redemption agreements themselves cannot be construed as admissions or adjudications of liability. MCLA 413.6; MSA 17.180. These four redemption agreements operated to foreclose among other things determination under the act as between the alleged employers and claimants of the following issues: jurisdiction over out-of-state injuries (in White's case); whether there was a contractual or statutory relationship of employer-employee (hotly disputed in White's and Pitts's cases); whether the claimed disabilities could be defined as total and permanent under the act; whether the disabilities resulted from personal injuries arising out of and in the course of employment.

The statute is clearly to the effect that a claimant must be "entitled to receive payments of workmen's compensation under this act" in order to participate in the fund's differential and additional benefits, and it makes no provision for those who might have been entitled to receive payments had they not redeemed. If plaintiffs are allowed a determination of issues previously compromised for the sole purpose of adjudicating the liability of the fund, the litigational and investigatory burden

would no doubt be shifted to the fund by the employers who have no further interest in the outcome. The direction that a fund participant receive differential payments "without application" would become meaningless and we would chart an uncertain course as to whether the fund could contest issues not contested by the employer. As the Attorney General points out in his brief, "The term 'without application' was removed from the above section by 1968 PA 227, effective July 1, 1968, but the practice remains in filing against the employer without a separate application directed to the fund". Were we to judicially redefine the traditional passive-derivative role of the fund, a role we have seen to be well-grounded in the statute, we would risk upset of an orderly administrative procedure which usually works to the benefit of claimants. As stated in the controlling opinion of the appeal board in the case of John B. White:

"To find an independent liability on the part of the Fund would be to not only impose investigatory, administrative and litigation responsibilities heretofore unanticipated, but would issue license to take an independent stance on any and all cases pending before the Bureau or this Board. The Fund could then dispute cases not disputed by the employer/carrier, in addition to joining in defenses of employer-defendants.

"Thus we tell the injured claimant that he has not one case, but two to prove before the full benefits of this Act become due him. Finding such a separate liability could well benefit John White, who chose to redeem the liability of his case before legal entitlement had been admitted or proven, but we would place before other injured Michigan employees twin hurdles to leap on their road to the full enjoyment of legislated benefits." 1972 WCABO 1506.

We therefore affirm the holding of the Work-

men's Compensation Appeal Board that the establishment of employer liability, either by admission or adjudication prior to redemption, is an absolute prerequisite to Second Injury Fund liability. We note, as did the appeal board, the case of *Derouin v Director of Workmen's Compensation Department,* 19 Mich App 309, 313; 172 NW2d 463, 466 (1969). There employer liability was redeemed after there had been decisions establishing both employer and fund liability. In holding that the fund's statutory obligation to pay differential benefits was not terminated by the subsequent redemption agreement, this Court stated:

"Although payment from the fund is dependent in the first instance upon the employee being a permanently and totally disabled person, as defined in the act, who on or after June 25, 1955, is entitled to receive payments of workmen's compensation, *once these facts are determined affirmatively,* the Second Injury Fund is required to pay the increased benefits as stated in the act." (Emphasis added.)

Larson cites *Derouin* and *Levi v Special Indemnity Fund,* 389 P2d 620 (Okla, 1964), for the proposition that fund liability is purely derivative, making an award against the employer a condition precedent to differential benefits. Larson, *supra,* § 59.31, p 88.123, fn 61 (1973 Cum Supp):

"*Derouin v Yeager,* [19 Mich App 309;] 172 NW2d 463 (Mich App 1969). Claimant suffered compensable injuries that left him totally disabled. His employer was ordered to pay compensation, and the Second Injury Fund was ordered to make supplemental payments. The employer terminated its obligation by entering into an agreement for the payment of benefits in a lump sum, and the Fund ceased making its payments. The Court held that the Fund's obligation to pay, *once it was ordered to do so,* was separate and apart from that of the employer, and the discharge of the employer's

obligation did not discharge the Fund." (Emphasis added.)

In the case of John B. White, the dissenting members of the appeal board refer to the case of *Bugg v Fairview Farms, Inc,* 385 Mich 338, 351–352; 189 NW2d 291, 297 (1971), where it is stated:

"In any event, in this case, we need not determine the abstract question of whether an approval of a redemption agreement is a determination of the conditions of liability under the act by the compensation commission. * * * 'There is no good reason why parties may not settle any part of a controversy upon which they may reach agreement and leave the controverted part for litigation.' *Wolverine Insurance Co v Klomparens,* 273 Mich 493, 497 [263 NW 724, 725] (1935). * * * The conditions of liability under the act are necessarily determined by the compensation department for the purpose only of approving a redemption agreement. But this does not necessarily adjudicate the issue for all purposes."

The *Bugg* case does not, however, portend the result that should be reached in the present case. That case involved a wrongful death action brought by the widow-administratrix against the employer and fellow employee of plaintiff's decedent. The employer's liability for compensation had been earlier redeemed, with an express reservation by the parties of the issue of whether the deceased had died in the course of his employment. The specific holding of the Supreme Court was that defendants were estopped to raise the redemption agreement as a defense because the disputed issue as to whether workmen's compensation was to be the exclusive remedy against the employer was reserved for determination in the law action. In the instant case, we are not concerned with the defense of res judicata, but rather

with specific statutory language mandating certain prerequisites to the liability of the Second Injury Fund.

Plaintiffs argue that the Legislature specifically provided that redemption of liability with the employer/carrier eliminates all liability of the Silicosis and Dust Disease Fund and that failure to make the same provision for the Second Injury Fund shows the intent of the Legislature to make the latter fund's liability separate and independent. However, the Silicosis and Dust Disease Fund as first created on May 1, 1966 provided, MCLA 417.5; MSA 17.223(1):

"(i) The trustees of the fund or their authorized representatives shall be permitted to compromise its liability by redemption in conjunction with a redemption entered into by the employer or its insurance carrier. *A redemption of liability with the employer or its insurance carrier shall in no way affect the liability of the fund unless it participates therein.*" (Emphasis added.)

In order to clearly designate a change in legislative intent, it was necessary in the Workmen's Compensation Act of 1969 for the Legislature to enact the following provision, MCLA 418.545; MSA 17.237(545):

"Sec. 545. After a carrier has paid an employee $12,500.00 for disability or death due to silicosis or other dust disease, the trustees may compromise the liability of the silicosis and dust disease fund by entering into a redemption of liability directly with the employee if in the judgment of the trustees it is in the employee's best interest to do so. Redemption of liability shall terminate all liability of the fund. A redemption of liability by a carrier for compensation paid for disability or death from silicosis or other dust disease made with the employee prior to the actual payment by

the carrier of $12,500.00 in compensation benefits shall eliminate all liability of the silicosis and dust disease fund."

Thus the reference to redemption in the current statute reflects a legislative change of mind about the desirability of the silicosis and dust disease fund having a liability apart from that of the employer where there has been a redemption and therefore, does not support plaintiffs' argument.

Of interest also is the new chapter 9 added to the workmen's compensation law in 1971, effective July 1, 1972. MCLA 418.901 *et seq;* MSA 17.237(901) *et seq.* Based on that chapter, a vocationally handicapped person as defined in the act may also under certain circumstances receive payments from the Second Injury Fund. However, MCLA 418.935; MSA 17.237(935) provides that redemption of employer liability before actual payment by the employer of those benefits which have accrued during the period of 104 weeks after the date of injury eliminates all liability, including vocational rehabilitation, of the Second Injury Fund.

Lastly, the opinion of the dissenting members of the appeal board in the case of John B. White cites an opinion of the Attorney General, 1 OAG, 1955, No 2244, p 475 (September 20, 1955) for the proposition that the Second Injury Fund has failed to follow the orders of the Attorney General to participate in redemption agreements and pay its pro rata share thereof. However, a careful reading of that opinion reveals that it was premised upon a person receiving compensation for permanent and total disability—payments which already included differential payments from the Second Injury Fund. In the case at bar, the fund has not made payments to plaintiffs because the employers' lia-

bility was never admitted or adjudicated. Had employer liability for permanent and total disability been established, and had lump-sum payments in advance been approved by the commission under the second provision of MCLA 412.22; MSA 17.172, amounts due from the employer and the fund could have been commuted on the present worth thereof in accord with the opinion of the Attorney General.

Affirmed.

All concurred.