WHITE v WEINBERGER BUILDERS, INC

BOYKO v CHRYSLER CORPORATION

MOORHOUSE v J D CANDLER ROOFING COMPANY, INC

PITTS v DAVISON-LINWOOD STANDARD STATION

Docket Nos. 55304, 55305, 55339, 55346. Argued November 4, 1974. Resubmitted April 21, 1976 (Calendar Nos. 16–19).—Decided June 4, 1976.

John B. White, John Boyko, Hansel O. Moorhouse, and Roosevelt Pitts sought workmen's compensation differential benefits from the Second Injury Fund after redemption of liability with their respective employers and insurers: Weinberger Builders, Inc., and Midland National Insurance Company; Chrysler Corporation; J. D. Candler Roofing Company, Inc.; and Davison-Linwood Standard Station; Citron Oil Company, and Travelers Insurance Company. The claims of White and Moorhouse were dismissed on the basis that the Second Injury Fund's liability is contingent upon payment of disability benefits by the employer or its insurance carrier following an admission or determination of employer liability. The Workmen's Compensation Appeal Board affirmed in both cases. Boyko and Pitts were awarded total and permanent disability benefits. The board reversed and held that redemption of liability prior to a hearing on the merits of a claim constituted neither acknowledgement nor legal establishment of Second Injury Fund liability. The Court of Appeals, V. J. Brennan, P. J., and Danhof and Bashara, JJ., affirmed in all four cases (Docket Nos. 14927, 14932, 15060, 15118). Plaintiffs appeal. *Held:*

1. The Second Injury Fund should not be subjected to a separate, independent hearing to determine whether the fund is liable for differential payments when the claimant and employer redeem all potential employer liability by entering into a negotiated settlement where employer liability has been neither admitted nor adjudicated.

2. The statutory language providing differential benefits to

---

REFERENCE FOR POINTS IN HEADNOTES
[1–9] 82 Am Jur 2d, Workmen's Compensation § 344.

those permanently and totally disabled requires that the claimant be entitled to receive payment of workmen's compensation benefits.

3. In the absence of a prior determination of employer liability, a redemption agreement between a workmen's compensation claimant and an employer or insurance carrier does not entitle a claimant to benefits and constitutes neither an admission nor an adjudication of employer liability.

Affirmed.

Justice Levin, with whom Chief Justice Kavanagh and Justice Williams concurred, dissented: The apparent legislative purpose in requiring the payment by the Second Injury Fund of differential benefits is to extend to permanently and totally disabled persons entitled to workmen's compensation the benefit of improvements of compensation and to spread the cost among all employers. It is inconsistent with the legislative purpose in requiring the payment of differential benefits to extend those benefits to permanently and totally disabled persons who establish employer liability before redemption but deny them to those who establish employer liability after redemption. Settlement of claims should not be discouraged in favor of years of litigation with concomitant deferral of payment of benefits to a time beyond, in some cases, the employee's lifetime. The possibility that large arrearages in differential benefits may have accumulated since September 1, 1967 should not deter the Supreme Court from the correct construction of the statute.

49 Mich App 430; 212 NW2d 307 (1973) affirmed.

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—SECOND INJURY FUND—DIFFERENTIAL BENEFITS—REDEMPTION—LIABILITY.

The Second Injury Fund should not be subjected to a separate, independent hearing to determine whether the Fund is liable for differential payments when the claimant and employer redeem all potential employer liability by entering into a negotiated settlement where employer liability has been neither admitted nor adjudicated.

2. WORKMEN'S COMPENSATION—SECOND INJURY FUND—DIFFERENTIAL BENEFITS—REDEMPTION.

The former statute providing for differential and additional benefits payable from the Second Injury Fund clearly required that a claimant must be entitled to receive payments of workmen's compensation under the Workmen's Compensation Act in order

to receive such benefits, and no provision was made for those who might have been entitled to receive payments had they not redeemed their claims (MCLA 412.9[a]).

3. WORKMEN'S COMPENSATION—SECOND INJURY FUND—DIFFERENTIAL BENEFITS—REDEMPTION—EMPLOYER LIABILITY.

The establishment of employer liability, either by admission or adjudication prior to redemption, is an absolute prerequisite to Second Injury Fund liability for differential and additional workmen's compensation benefits.

4. WORKMEN'S COMPENSATION—SECOND INJURY FUND—REDEMPTION—STATUTES—CONSTRUCTION.

The argument that the Legislature specifically provided that redemption of liability with the employer or carrier eliminates all liability of the Silicosis and Dust Disease Fund and that failure to make the same provision for the Second Injury Fund shows the intent of the Legislature to make the latter fund's liability separate and independent is not supported by legislative history, which shows that the reference to redemption in the Silicosis and Dust Disease Fund statute reflects a legislative change of mind from a prior provision about the desirability of the fund having a liability apart from that of the employer where there has been a redemption (MCLA 417.5, 418.545).

5. WORKMEN'S COMPENSATION—SECOND INJURY FUND—DIFFERENTIAL BENEFITS—LIABILITY.

Although payment from the Second Injury Fund is dependent in the first instance upon the employee being a permanent and totally disabled person, as defined in the Workmen's Compensation Act, who on or after June 25, 1955 is entitled to receive payments of workmen's compensation, once these facts are determined affirmatively, the Second Injury Fund is required to pay the increased benefits as stated in the act.

6. WORKMEN'S COMPENSATION—THIRD-PARTY TORTFEASORS—SECOND INJURY FUND—REDEMPTION.

The statutory provisions for participation of the employer and insurance carrier in a recovery against a third-party tortfeasor, which do not allow the Second Injury Fund to participate, have no relevance to either the establishment of employer or Second Injury Fund liability or the financial responsibilities resulting from a redemption agreement (MCLA 413.15).

7. WORKMEN'S COMPENSATION—SECOND INJURY FUND—DIFFERENTIAL BENEFITS—LIABILITY—REDEMPTION.

The statutory language providing differential benefits to those

permanently and totally disabled requires that the claimant be entitled to receive payment of workmen's compensation benefits and in the absence of a prior determination of employer liability, a redemption agreement between a claimant and an employer or insurance carrier does not entitle a claimant to benefits and constitutes neither an admission nor an adjudication of employer liability (MCLA 418.521[2]).

DISSENTING OPINION

KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ.

8. WORKMEN'S COMPENSATION—SECOND INJURY FUND—DIFFERENTIAL BENEFITS—REDEMPTION—EMPLOYER LIABILITY.

   *Establishment of employer liability, either by admission or adjudication, prior to redemption is not an absolute prerequisite to liability of the Second Injury Fund for differential workmen's compensation benefits.*

9. WORKMEN'S COMPENSATION—SECOND INJURY FUND—DIFFERENTIAL BENEFITS—REDEMPTION—EMPLOYER LIABILITY.

   *It is inconsistent with the legislative purpose in requiring the payment of differential benefits to extend those benefits to permanently and totally disabled persons who establish employer liability before redemption but to deny them to those who establish employer liability after redemption; settlement of claims should not be discouraged in favor of years of litigation with concomitant deferral of payment of benefits.*

*Lopatin, Miller, Bindes & Freedman* (by *Michael A. Gantz)*, for plaintiff John B. White.

*Marston, Sachs, O'Connell, Nunn & Freid* (by *Jeanne M. Nunn)*, for plaintiff John Boyko.

*Sharples, Klein & Gale* (by *Charles G. Gale)*, for plaintiff Hansel O. Moorhouse.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Donald W. Loria)*, for plaintiff Roosevelt Pitts.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *A. C. Stoddard*

and *David J. Watts,* Assistants Attorney General, for the Second Injury Fund.

Amicus Curiae:  *E. R.    Whinham,    Jr.    (Buell Doelle,* of counsel), for the Michigan Self Insurers' Association.

FITZGERALD, J. I would affirm the decisions of the Workmen's Compensation Appeal Board and the Court of Appeals. The Second Injury Fund should not be subjected to a separate, independent hearing to determine whether the fund is liable for differential payments when the claimant and employer redeem all alleged potential employer liability by entering into a negotiated settlement where employer liability has been neither admitted nor adjudicated.

This Court's review is limited to a specific legal issue which is of major significance to the Workmen's Compensation Law of Michigan. The factual circumstances of these four consolidated cases were succinctly stated in the Court of Appeals opinion.[1]

---

[1] "John B. White was a race driver who was injured on June 14, 1964 while driving one of defendant Weinberger's vehicles at Terre Haute, Indiana. His injuries included partial severing of the spinal cord, leaving him described by medical testimony as a tetraplegic. There was strong disagreement over his actual employment status at the time of his injury and defendant and its insurer never admitted to liability. No voluntary compensation was paid until a redemption agreement was reached in the amount of $75,000. This was paid in the form of a six-month 'jurisdictional payment' in the amount of $1,539 at the time of the redemption hearing, with the balance paid subsequent to the approval by the referee and director of the bureau. The record reveals that plaintiff was completely aware of his options before the redemption was consummated. Plaintiff and his counsel made clear their intent to proceed against the fund for additional benefits, but plaintiff acknowledged that he would be willing to redeem for the stated sum regardless of the outcome of his pending claim against the fund. No hearing on the merits of plaintiff's claim against defendant Weinberger was ever held, nor was any decision ever entered in that regard.

"John Boyko was injured when struck in the back by a hi-lo truck on October 19, 1957 and has not worked since November 14, 1957.

In each case, a redemption agreement[2] was en-

Defendant Chrysler Corporation voluntarily paid total disability weekly benefits to the end of the statutory 500-week period. Plaintiff Boyko then petitioned for permanent and total disability, claiming loss of industrial use of both legs. The claim was denied by Chrysler. A redemption was entered into between plaintiff and Chrysler in the amount of $5,400 and was approved by the referee. The Second Injury Fund was dismissed as a defendant 'without prejudice to plaintiff's right to refile against said defendant in the future'.

"Hansel O. Moorhouse fell from a ladder while in the employment of defendant Candler Company, at age 70, on September 11, 1956. His injury was reported as 'severe spinal injury', and voluntarily weekly benefits were paid for 500 weeks. At the end of this period, plaintiff petitioned for permanent and total disability based on the loss of industrial use of his legs. A redemption of defendant firm's prospective liability was approved by the referee in the amount of $5,000. No proofs were taken on the claim of loss of industrial use. The record reveals that plaintiff and counsel intended to proceed against the Second Injury Fund subsequent to the redemption, but were also aware that the redemption involved possible waiver of plaintiff's right to proceed against the fund.

"Roosevelt Pitts froze the fingers of both hands while working for a gas station on January 1, 1968 in sub-zero weather. This resulted in amputations through the middle phalanges of the four fingers of the left hand and through the middle phalanges of the index and middle fingers of the right hand. No weekly benefits were paid because of a lack of insurance being carried by the gas station proprietor, and because there was (quoting plaintiff's brief) 'substantial question as to whether the Citron Oil Company was a statutory employer within the meaning of Section 10(a) of Part I of the Workmen's Compensation Act', formerly MCLA 411.10; MSA 17.150, currently MCLA 418.171; MSA 17.237(171). The liability of defendant gas station and defendant oil company was redeemed for $9,000 in an action approved by the referee. Plaintiff's counsel stated on the record at the redemption hearing that he believed 'there is a good chance of perhaps collecting benefits from the second injury fund even though this Redemption is approved'. Plaintiff thereafter petitioned for benefits from the fund, claiming loss of industrial use of both hands." 49 Mich App 430, 432–434; 212 NW2d 307, 309–310.

[2] MCLA 412.22; MSA 17.172, currently MCLA 418.835; MSA 17.237(835), provided:

"Whenever any weekly payment has been continued for not less than 6 months, the liability therefor may be redeemed by the payment of a lump sum by agreement of the parties, subject to the approval of the compensation commission, and said compensation commission may at any time direct in any case, if special circumstances be found which in its judgment require the same, that the deferred payments due under this act be commuted on the present worth thereof at 5% per annum to 1 or more lump sum payments, and that such payments shall be made by the employer or the insurance company carrying such risk, or commissioner of insurance.

tered into between the injured claimant and the employer and redemption orders approving the agreements were issued by the hearing referee. Each then sought total and permanent disability benefits from the Second Injury Fund.[3]

The claims of plaintiffs White, Moorhouse, and Pitts were dismissed in separate proceedings by the hearing referee on the basis that the Second Injury Fund's liability is contingent upon payment of disability benefits by the employer or its insurance carrier following an admission or determination of employer liability. The Workmen's Compensation Appeal Board affirmed in each case. Plaintiff Boyko's claim differed in that it was dismissed "without prejudice to plaintiff's right to re-file against said defendant [Second Injury Fund]

When an application is made to redeem liability, the application may, within the discretion of the department be treated also as being an application for an advance lump sum payment. The filing of a petition for redemption or advance lump sum payment shall not be considered an admission of liability and in any case where the department treats any application for redemption as an application for advance lump sum payment under this section, the employer shall be entitled to a hearing on the question of liability."

[3] MCLA 412.9(a); MSA 17.159(a) provided:

" * * * Any permanently and totally disabled person as defined in this act who, on or after June 25, 1955, is entitled to receive payments of workmen's compensation under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall after the effective date of any amendatory act, by which his disability is defined as permanent and total disability or by which the weekly benefit for permanent and total disability is increased, receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now or shall hereafter be entitled to receive from his employer under the provisions of this act as the same was in effect at the time of his injury and the amount now provided for his permanent and total disability by this or any other amendatory act with appropriate application of the provisions of paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability according to the full rate provided in the schedule of benefits."

in the future". Boyko refiled, prevailed, and was awarded total and permanent disability benefits. However, the board reversed the referee's decision and held that redemption of liability prior to a hearing on the merits of the claim constituted "neither acknowledgement nor legal establishment of Second Injury Fund liability".

Leave was granted by the Court of Appeals and the four cases were consolidated for oral argument. That Court affirmed the board's decision in holding that the "liability of the Second Injury Fund is derivative from that of the employer, so that the fund cannot be subjected to a separate, independent hearing as to liability for differential payments once the employer's alleged prospective liability has been redeemed via a negotiated settlement".[4] We granted leave to consider the correctness of this ruling.

I would adopt entirely the analysis of and the result reached by the Court of Appeals opinion. My comments address those theories advanced by plaintiffs either not discussed by the Court of Appeals or which bear emphasis or elaboration.

Plaintiffs contend that *Derouin v Director of Workmen's Compensation Department,* 19 Mich App 309; 172 NW2d 463 (1969), is not specifically limited to cases involving a previous award of permanent and total disability benefits. Rather than "break new ground" by restricting the applicability of *Derouin,* as plaintiffs argue, I can conceive of no interpretation other than that given by the board to the statement:

"Although payment from the fund is dependent in the first instance upon the employee being a permanently and totally disabled person, as defined in the act,

_____
[4] 49 Mich App 430, 432; 212 NW2d 307 (1973).

who on or after June 25, 1955, is entitled to receive payments of workmen's compensation, *once these facts are determined affirmatively,* the Second Injury Fund is required to pay the increased benefits as stated in the act." (Emphasis added.) *Derouin, supra,* p 313.

There is no inconsistency in maintaining that the fund's liability is derivative from that of the employer, yet requiring it to continue payments after the employer terminated its obligation to the plaintiff. The fund's obligation to pay became separate and apart from the employer *once it was ordered to pay* and not before.[5] I would affirm the interpretation given *Derouin* by the board and the Court of Appeals.[6]

Plaintiffs argue that if the Second Injury Fund's liability were truly derivative, the fund should be entitled to share in the proceeds of a third-party recovery. The fund was denied such participation in *Mead v Peterson-King Co,* 24 Mich App 530; 180 NW2d 304 (1970). There were no provisions within MCLA 413.15; MSA 17.189[7] which authorize the fund to share proceeds received from a third party. The statute permitted an *employer* or its *compensation carrier* to be subrogated to the rights of the

---

[5] 2 Larson's Workmen's Compensation Law, § 59.31, pp 10-292 to 10-293.

[6] Plaintiffs also cite *Dokter v City of Holland,* 1971 WCABO 730, in support of their contention that the fund's liability is separate and apart from the employer. However, in that case, plaintiff claimed benefits from the deceased's employer as a dependent widow in her own right and also from the Second Injury Fund as administratrix of the deceased's estate. Redemption of the former claim did not foreclose the latter. Further, as indicated by defendants, the liability of the fund for differential payment differs greatly from employers' liability for death benefits.

[7] "If the injured employee or his dependents or personal representative does not commence such action within 1 year after the occurrence of the personal injury, then the employer or its compensation insurance carrier may, within the period of time for the commencement of actions prescribed by statute, enforce the liability of such other person in the name of that person."

employee against a third-party tortfeasor. These provisions relating to the mitigation of employer liability have no relevance to either the establishment of employer or Second Injury Fund liability or the financial responsibilities resulting from a redemption agreement.

Plaintiffs next contend that under proper circumstances the Second Injury Fund is liable for all additional total and permanent disability benefits in excess of $10,500. It is their belief that the fund may be obligated to pay differential benefits even though the employer has no obligation whatsoever. I fail to see how plaintiffs' position gains support from the case authority cited. In *Felcoskie v Lakey Foundry Corp,* 382 Mich 438; 170 NW2d 129 (1969), the employee was required to offer proofs that the dust disease suffered by the claimant was so common and widespread that it represented a threat to the industry comparable to those specified diseases which limited employer liability to $10,500. The case dealt with the classification of a dust disease to determine the applicability of a statutory limitation upon employer liability *after* the employer was held responsible for total and permanent disability benefits. If this classification is the "proper circumstance" to which plaintiffs refer, I remain unconvinced of its application here.

As to plaintiffs' point that the fund can be obligated to pay differential benefits even where the employer's obligation is zero, I would concede the accuracy of the statement but again question its applicability to this case. *King v Second Injury Fund,* 382 Mich 480; 170 NW2d 1 (1969), involved the construction of a 1927 statute which limited employer liability to two-thirds of claimant's average weekly wage and the 1955 amendment which provided for payment from the Second Injury

Fund based upon an amended schedule of workmen's compensation benefits. At issue was the amount of differential payments due plaintiff from the Second Injury Fund. The case simply restricted the application of the statutory limitation of weekly benefits to the employer. The Second Injury Fund was required to pay an amount equal to the difference between the amount to which claimant was entitled in 1955 and the amount provided for total and permanent disability based upon the amended schedule of workmen's compensation benefits. The employer's obligation to the claimant was zero, as plaintiffs indicate, but due only to the fact that the period for which the employer was liable had terminated. Moreover, in *King,* unlike the instant case, there was a determination that plaintiff was entitled to total and permanent disability benefits.

Finally, the statutory language of MCLA 418.521(2); MSA 17.237(521)(2)[8] providing differential benefits to those permanently and totally disabled requires that the claimant be *entitled* to receive payment of workmen's compensation bene-

---

[8] This subsection (previously MCLA 412.9[a]; MSA 17.159[9] [a]) provides:

"Any permanently and totally disabled person as defined in this act, if such total and permanent disability arose out of and in the course of his employment, who, on and after June 25, 1955, is entitled to receive payments of workmen's compensation in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability, and for a lesser number of weeks than the duration of such permanent and total disability, after the effective date of any amendatory act by which his disability is defined as permanent and total disability, or by which the weekly benefits for permanent and total disability are increased, shall receive weekly from the carrier on behalf of the second injury fund differential benefits equal to the difference between what he is now or shall hereafter be entitled to receive from his employer under the provisions of this act as the same was in effect at the time of his injury, and the amounts now provided for his permanent and total disability by this or any other amendatory act, with appropriate application of the provisions of sections 351 to 359."

fits. In the absence of a prior determination of
employer liability, a redemption agreement be-
tween a claimant and an employer or insurance
carrier does not entitle a claimant to benefits and
constitutes neither an admission nor an adjudica-
tion of employer liability.

Affirmed.


COLEMAN, LINDEMER, and RYAN, JJ., concurred
with FITZGERALD, J.


LEVIN, J. *(dissenting)*. A statute enacted in 1955[1]
provided that any permanently and totally dis-
abled person receiving workmen's compensation
payments in amounts per week less than the
present schedule and for a lesser number of weeks
than the duration of such disability shall be paid
at the current rate of compensation for the dura-
tion of such disability. Formerly, compensation
was payable to persons permanently and totally
disabled for 750-800 weeks;[2] an increase in the rate
of compensation benefits did not benefit those
previously injured.[3]

The burden of this enhancement of benefits was
not imposed on the employer. The cost was spread
among all employers; the Second Injury Fund

---

[1] 1955 PA 250.

[2] 1953 PA 198 changed the duration of benefits for permanent and
total disability from 750 to 800 weeks. The 750 week duration was
established in 1943 (1943 PA 245; 1948 CL 412.9; MSA 17.159). The
1955 act (1955 PA 250) substituted the current provision *(see* MCLA
418.351; MSA 17.237[351]): "the conclusive presumption of total and
permanent disability shall not extend beyond 800 weeks from the
date of injury, and thereafter the question of permanent and total
disability shall be determined in accordance with the fact, as the fact
may be at that time".

[3] The concept that an individual's benefits should be adjusted in
subsequent years was extended to injured workers generally by the
1969 act (1969 PA 317). The burden of this obligation was imposed on
the employer. MCLA 418.355; MSA 17.237(355).

(financed by assessments on insurance carriers and self-insurers) was required to pay differential benefits—the difference between what the permanently and totally disabled employee was then receiving from his employer and the compensation presently provided for such disability[4]—for the duration of

---

[4] *See* 1948 CL 412.9(a); MSA 17.159.

As originally enacted, the provision read:

"Any person who is permanently and totally disabled and who is receiving payments of workmen's compensation which are payable to such person under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall hereafter receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now receiving per week and the amount per week now provided for permanent and total disability with appropriate application of the provisions of paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability according to the full rate provided in the schedule of benefits." 1955 PA 250.

In 1956, the opening language was changed to read:

"Any permanently and totally disabled person as defined in sections 8a and 10 who, on or after June 25, 1955, is entitled to receive payments of workmen's compensation under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall after the effective date of this amendatory act receive weekly, * * * ." 1956 PA 195.

The provision took its present form in 1965 when it was amended to read:

"Any permanently and totally disabled person as defined in this act who, on or after June 25, 1955, is entitled to receive payments of workmen's compensation under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall after the effective date of any amendatory act, by which his disability is defined as permanent and total disability or by which the weekly benefit for permanent and total disability is increased, receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now or shall hereafter be entitled to receive from his employer under the provisions of this act as the same was in effect at the time of his injury and the amount now provided for his permanent and total disability by this or any other amendatory act with appropriate application of the provisions of

the disability.

In these consolidated appeals the employers disputed whether the employees were entitled to workmen's compensation benefits as permanently and totally disabled persons. The claims for such compensation against the employers were adjusted without adjudication when the department approved redemption agreements settling the claims.

The redemption agreements with the employers did not cover the liability of the Second Injury Fund for differential benefits. At the redemption hearing in *White* the fund declared that if the redemption was approved it would deny liability on the ground that the liability of the employer had not been adjudicated. The redemption was approved on the understanding that the question whether the fund was subject to liability would be determined in subsequent proceedings. The redemption agreements in *Moorhouse, Boyko* and *Pitts*[5] were also approved on the understanding that the question whether the fund was subject to liability for differential benefits was unresolved.

Hearings were held on the claims for differential benefits.

The referee in *White* concluded that White's claim was "dependent" upon a showing that the employer "had made a payment of the initially required disability benefits and had admitted liability or that they had been found liable to make

paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability according to the full rate provided in the schedule of benefits." 1965 PA 44, 1948 CL 412.9; MSA 17.159.

The present statutory provision is MCLA 418.521; MSA 17.237(521).

[5] The redemption was approved in *White* September 19, 1966; in *Moorhouse* October 13, 1966; in *Boyko* September 10, 1968; and in *Pitts* December 4, 1969.

such disability payments". By reason of the redemption agreement, no such showing had been made. The factual issue whether White was a permanently and totally disabled person entitled to workmen's compensation benefits was not decided.

The referee in *Moorhouse* concluded that the redemption of the employer's liability "also redeemed any rights he might have against the Second Injury Fund".

The referees in *Boyko* and *Pitts,* however, found that the employees were permanently and totally disabled and ordered the Second Injury Fund to pay differential benefits.[6]

The Workmen's Compensation Appeal Board concluded that the fund had no liability in these cases. In *White,* the board found "the fund's liability to be derivative, the employee's cause of action single"[7] and said that "an establishment of liability *prior to redemption* is an absolute prerequisite to Second Injury Fund liability". (Emphasis supplied.) The board disposed of *Moorhouse, Boyko* and *Pitts* on the authority of *White* and did not reach the factual issues decided for the employees in *Boyko* and *Pitts.*

The Court of Appeals affirmed "the holding of the Workmen's Compensation Appeal Board that the establishment of employer liability, either by admission or adjudication prior to redemption, is an absolute prerequisite to Second Injury Fund liability".[8]

---

[6] The referee's order in *White* was dated May 22, 1967; in *Moorhouse* May 8, 1967; in *Boyko* January 2, 1970; and in *Pitts* March 1, 1971.

[7] The appeal board framed the question: "Is the liability of the Second Injury Fund derivative or independent, the injured employee's cause of action single or divisible?"

[8] *White v Weinberger Builders, Inc,* 49 Mich App 430, 438–439; 212 NW2d 307 (1973).

We conclude that it is inconsistent with the legislative purpose in requiring the payment of differential benefits to extend those benefits to permanently and totally disabled persons who establish employer liability before redemption but deny those benefits to permanently and totally disabled persons who are able to establish employer liability after redemption.

We would reverse the Court of Appeals and remand these causes to the appeal board for resolution of the factual issues whether each plaintiff was permanently and totally disabled and entitled to workmen's compensation benefits in amounts less than provided in subsequent schedules or for a lesser number of weeks than the duration of such disability.[9]

I

The apparent legislative purpose in requiring the payment by the Second Injury Fund of differential benefits is to extend to permanently and totally disabled persons entitled to workmen's compensation the benefit of legislative improvements in the amount and duration of such compensation and to spread the cost among all employers.[10]

It is not contended that permanently and totally disabled persons who receive lump sum settlements are less in need of the supplementation provided by differential benefits than are permanently and totally disabled persons who receive weekly payments. The Second Injury Fund accepts

---

[9] The fund has paid nothing to these plaintiffs in settlement of its potential liability. Our order of remand does not preclude the fund from entering into an agreement to redeem. See 1 OAG, 1955, No 2244, p 475 (Sept 20, 1955).

[10] *See Rasar v Chrysler Corp,* 382 Mich 169; 169 NW2d 303 (1969).

the decision of the Court of Appeals in *Derouin v
Director of Workmen's Compensation Department,*
19 Mich App 309; 172 NW2d 463 (1969), where an
agreement to redeem the liability of the employer
was approved after separate orders had been en-
tered by the referee against the employer (for
permanent and total disability) and against the
fund (for differential benefits). The Court of Ap-
peals rejected the fund's contention that its liabil-
ity is so "derivative" that a redemption of the
employer's liability serves to relieve the fund of
adjudicated liability.[11]

A permanently and totally disabled person has
two potential sources of recovery:

(a) his employer: workmen's compensation bene-
fits in accordance with the schedule in effect at the
time of injury;

(b) the fund: differential benefits on account of
subsequent increases in the level or duration of
benefits.

To simply state that the injured worker has one
or two claims or that his claim is single or divisi-
ble begs the question whether he can settle with
his employer before as well as after adjudication
or admission[12] and still seek recovery from the
fund.

The injured employee's claim or cause of action
is "indivisible" in the sense that a final adjudica-

---

[11] The statutory language "who * * * is entitled to receive pay-
ments of workmen's compensation under this act * * * for permanent
and total disability" establishes the criteria of eligibility for differen-
tial benefits: the employee must be permanently and totally disabled
and his disability must be compensable under the act. Current receipt
of weekly benefits is not a criterion of eligibility. *Derouin v Director
of Workmen's Compensation Department,* 19 Mich App 309; 172
NW2d 463 (1969).

[12] The fund states that it is liable for differential benefits where the
employer's liability for total and permanent disability has been
established through adjudication or admission by the employer.

tion that the employee is not entitled to workmen's compensation benefits as a permanently and totally disabled person would preclude recovery from the fund of differential benefits.

The fund's liability is "derivative" in the sense that it has no liability unless the employer was liable. It does not follow, however, that the question whether the employer was liable is not susceptible of proof and adjudication after redemption.

In most cases the unresolved issue settled by the redemption will be whether the disability is permanent and total within the meaning of the act. The factual issues in such cases are primarily medical and susceptible of current appraisal based on the employee's physical condition preceding the hearing. In *Boyko* and *Pitts,* fund investigators were able to obtain medical testimony in support of the fund's denial of permanent and total disability. In *White* and *Pitts* the fund, aware of the proposed redemptions, was in a position to have requested, as a precondition to approval of the redemption, the referee's assistance in obtaining the proofs assembled by the employer in support of its denial of liability.

We perceive no intractable problems for the fund in defending claims after redemption. It appears that the fund has both the investigative and legal resources to defend its interests adequately.

Whether the Second Injury Fund should receive notice of permanent and total disability claims and an opportunity to defend is not an issue in these appeals.[13] We see no reason why it should not be

---

[13] The Attorney General says that even if the employee's claim against the employer for total and permanent disability benefits does not name the Second Injury Fund, the Workmen's Compensation Bureau notifies the fund of the claim.

enabled to or why it could not intervene to protect its interests.

The fund asserts that it has been its practice to regard admission by an employer or adjudication against an employer as establishing entitlement to permanent and total disability benefits which is binding on it. This practice appears to have developed in the processing of claims by employers who asserted that by reason of a second injury the fund —not the employer—was responsible for permanent and total disability benefits.[14]

It was not until late 1965 that the fund sought to extend the asserted practice to permanent and totally disabled claimants generally. Differential benefits were not in fact payable for the period between August 11, 1956 and September 1, 1965.[15] The redemption hearing in *White* was held soon after differential benefits first became payable. The fund cannot point to a history of settled practice in support of its contention that the policy it followed in adjusting the claims of employers for reimbursement for second injury benefits establishes that the injured worker's claim is "indivisible" and he cannot settle with the employer and then seek an adjudication against the fund of his entitlement to differential benefits.

Employers and employees alike are constrained for a variety of reasons to enter into redemptions. White feared impending death. The amount offered, $75,000, provided him and his family financial security. At the time of their redemption hearings, Moorhouse was 81, Boyko was 71 and

---

[14] This practice was extended when benefits were enlarged from 750 to 800 weeks for permanently and totally disabled persons *[see* fn 2] and the fund was made responsible for payment for the additional 50 weeks.

[15] Differential benefits in *Boyko* were ordered commencing September 1, 1965 and in *Pitts* commencing March 2, 1968.

Pitts was 63. The amounts paid Moorhouse, Boyko, and Pitts, while relatively small, represented a substantial portion of the employer's total liability payable weekly if the employees had prevailed after perhaps years of litigation. The purpose of the Workmen's Compensation Act—to compensate injured workers—is not served by a construction which would discourage settlement in favor of years of litigation with concomitant deferral of payment of benefits to a time beyond, in some cases, the employee's lifetime.

## II

The contention that large arrearages in differential benefits may have accumulated since September 1, 1967 to an untold number of claimants is a cause of concern. The delay in adjudication of this question is part of the cause;[16] the failure of some claimants to assert their claims is another. We appreciate that there is no statute of limitation. Whether some accommodation on that account may be in order is a question we need not now decide. If the arrearages are as large as the fund and the amicus claim, the Legislature might conclude that some limitations should be imposed; if the Legislature does not act, this Court may be persuaded to provide relief.[17] The relevant facts on

[16] The redemption in *White* was approved September 19, 1966. The referee decided against differential benefits May 22, 1967. The appeal board affirmed July 7, 1972. The Court of Appeals affirmed September 23, 1973. The case was submitted to this Court November 4, 1974. *See* fns 5 and 6.

[17] In *Baldwin v Chrysler Corp,* 67 Mich App 61; 240 NW2d 266 (1976), the Court of Appeals held that the one-year-back rule (MCLA 418.833[1]; MSA 17.237[833][1]) applies to a claim against the Second Injury Fund where specific loss benefits were voluntarily paid for a period ending on July 5, 1947 and the workman first petitioned for total and permanent disability benefits on February 10, 1972; the appeal board's award of benefits from January 12, 1946 was erroneous insofar as it required payments prior to February 10, 1971. The Court

the "retroactivity" issue have not been developed. The resolution of that question should not deter us from the correct construction of the statutory language as it affects these appeals and the future application of this remedial legislation.

We would reverse and remand to the appeal board.

KAVANAGH, C. J., and WILLIAMS, J., concurred with LEVIN, J.

---

of Appeals declared that while the one-year-back rule was not a statute of limitation, it was a limitation on the appeal board's authority to order the payment of benefits.

*Compare Anaya v Sante Fe,* 80 NM 54; 451 P2d 303 (1969), with *Industrial Commission v Carpenter,* 102 Colo 22; 76 P2d 418 (1938), on the question whether an unduly delayed proceeding seeking workmen's compensation may be barred by laches.