FELCOSKIE *v.* LAKEY FOUNDRY CORPORATION.

OPINION OF THE COURT.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—QUESTIONS RAISED FOR THE FIRST TIME ON APPEAL.

A question may not usually be raised for the first time on appeal, but this general rule will not be followed where consideration of a claim sought to be raised is necessary to a proper determination of the case.

2. WORKMEN'S COMPENSATION—PARTIAL DISABILITY—TEMPORARY OR PERMANENT TOTAL DISABILITY—SILICOSIS—DUST DISEASE.

The workmen's compensation act provides that compensation is not available for partial disability due to silicosis or other dust disease, but compensation not to exceed $10,500 is payable to employees or their dependents if claimant suffers temporary or permanent total disability or death from silicosis or other dust disease (CLS 1961, § 417.4, as amended by PA 1965, No 44).

3. SAME—DUST DISEASE—COMPENSATION AVAILABLE—LIMITATION.

Phthisis, silicosis, and pneumoconiosis, three of the most common and likely dust diseases, were made compensable by amendment to the workmen's compensation act in 1937, provided the diseases were contracted while working in certain listed occupations, but because of the prevalence of these diseases, the legislature further limited the amount of available compensation (PA 1912 [1st Ex Sess], No 10, pt 7, §§ 1, 4, as added by PA 1937, No 61).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 545.
[2–7] 58 Am Jur, Workmen's Compensation §§ 252, 283.
[8] 5 Am Jur 2d, Appeal and Error § 1009.

*Dissenting Opinion*

[9] 58 Am Jur, Workmen's Compensation §§ 252, 290.

4. SAME—SILICOSIS OR OTHER DUST DISEASE—CONSTRUCTION OF STATUTES.

Silicosis or other dust disease as used in the 1937 amendment to the workmen's compensation act was used to mean phthisis, silicosis, and pneumoconiosis and then only if contracted in the manner indicated in the schedule of diseases (PA 1912 [1st Ex Sess], No 10, pt 7, §§ 1, 4, as added by PA 1937, No 61).

5. SAME—AMENDMENT—SILICOSIS OR OTHER DUST DISEASE—CONSTRUCTION OF STATUTES—LIMITATION.

The workmen's compensation act was amended in 1943 to abolish the schedule of diseases and extend coverage of the act to occupational disabilities as well as disease, but even with the broadened coverage of the act as amended, the limitation on amount of recovery of workmen's compensation on "silicosis or other dust disease" was retained, thus carrying on the meaning of that phrase which did not include all disabilities caused by dust disease, but was limited to phthisis, silicosis, and pneumoconiosis or other dust disease posing such a general threat to the industry (PA 1912 [1st Ex Sess], No 10, pt 7, § 1, as amended by PA 1943, No 245).

6. SAME—AMENDMENT—DUST DISEASE—SINUSITIS AND RHINITIS—LIMITATION—APPLICABILITY.

Amendment to the workmen's compensation act to allow recovery for phthisis, silicosis, and pneumoconiosis when contracted in certain occupations was intended to protect industry from being swamped by these 3 prevalent diseases, but there is no apparent reason why the legislature would be concerned over a rare or unusual disease; thus, where plaintiff became ill with sinusitis and rhinitis and lost the sight in both of his eyes after working for a number of years as a coremaker, the limitation imposed upon recovery for silicosis and other dust disease would not be applicable to plaintiff's disease and disability (CLS 1961, § 417.4, as amended by PA 1965, No 44).

7. SAME—DUST DISEASE—LIMITATION—BURDEN OF PROOF.

An employer who asserts that the $10,500 limitation on liability for workmen's compensation applies to a dust disease bears the burden of proving that the disease is so common and widespread as to present a general threat to the industry comparable to silicosis, phthisis, or pneumoconiosis and if he fails to sustain that burden of proof the limitation does not apply (CL 1948, §§ 417.1, 417.4, as amended by PA 1965, No 44).

8. Costs—Workmen's Compensation—Appeal and Error—Public Question—Dust Disease.

No costs are allowed on appeal from a determination by the Court of Appeals that the limitation on recovery for silicosis or other dust disease is not applicable to a disease diagnosed as sinusitis and rhinitis (CLS 1961, § 417.4, as amended by PA 1965, No 44).

Dissenting Opinion.

Dethmers, Kelly, and Black, JJ.

9. Workmen's Compensation—Coremaker—Dust Disease—Limitation.

Plaintiff, a coremaker who lost the sight of both eyes from sinusitis and rhinitis, was subject to limitation of $10,500 in amount of workmen's compensation recoverable since he was suffering from dust disease, it being immaterial whether his affliction is widespread in the industry or not (CL 1948, § 417.4, as amended by PA 1965, No 44).

Appeal from Court of Appeals, Division 3, McGregor, P. J., and Holbrook and C. Kaufman, JJ., vacating an order of the Workmen's Compensation Appeal Board and reinstating an order of the hearing referee. Submitted June 3, 1969. (Calendar No. 4, Docket No. 52,105.) Decided September 3, 1969. Rehearing denied October 6, 1969.

11 Mich App 710, affirmed.

Application by Henry Felcoskie for hearing an adjustment of a workmen's compensation claim. Hearing referee awarded applicant $36 per week for 800 weeks plus medical and hospital expenses from Lakey Foundry Corporation and $27 per week from Second Injury Fund. Defendant Lakey Foundry Corporation appealed to the Workmen's Compensation Appeal Board. The Appeal Board modified the hearing referee's order to limit the liability of the Lakey Foundry Corporation to $10,500. Defendant Second Injury Fund appealed to the Court of Appeals. Order of appeal board vacated and order

of hearing referee reinstated. Defendant Lakey Foundry Corporation appeals. Affirmed and remanded.

*Cholette, Perkins & Buchanan (Edward D. Wells,* of counsel), for defendant-appellant Lakey Foundry. Corporation.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *A. C. Stoddard* and *Glenn W. House, Jr.,* Assistant Attorneys General, for defendant-appellee Second Injury Fund.

T. G. KAVANAGH, J. Henry Felcoskie was employed by defendant Lakey Foundry Corporation as a coremaker for many years. On November 2, 1964, he became ill with symptoms of a nasal infection diagnosed as sinusitis and rhinitis. However, in spite of prompt treatment, his condition worsened and by November 17, 1964 he had lost the sight in both of his eyes.

Plaintiff Felcoskie filed for workmen's compensation, claiming that his employment exposed him to dust and fumes which caused his disability and loss of sight. The referee awarded compensation of $36 per week to be paid by his employer for 800 weeks from November 3, 1964 and $27 per week to be paid by the second injury fund for 756.5 weeks starting September 1, 1965.

The employer appealed the referee's decision to the workmen's compensation appeal board raising first the question: "Does the plaintiff suffer from an occupational disability having its origin in his employment with the defendant?" and subsequently the additional question: "In the event plaintiff is held entitled to recover compensation, should the award be limited to $10,500?"

The appeal board affirmed the referee's finding that the employee's disability did have its origin in his employment with the defendant, but modified his award to provide (in effect) that the second injury fund was solely responsible for compensation beyond the amount of $10,500.

The second injury fund appealed the decision of the appeal board asserting that the limitations of part 7, § 4[1] are not applicable to the disability here involved.

The Court of Appeals reversed the appeal board and reinstated the order of the referee.

We granted leave (381 Mich 777) and the appellant asks us to consider two questions: (1) May the second injury fund raise the question of the applicability of the section 4 limitation since it did not do so before the appeal board, and (2) Did the appeal board properly apply the section 4 limitation?

In his first question appellant contends that the second injury fund did not argue before the appeal board that section 4 did not apply to plaintiff's claim and hence cannot now be heard to argue it. Whatever the technical correctness of appellant's argument, we perceive this issue to be one necessary to proper determination of this appeal and accordingly will consider it.

"The general rule that a question may not be raised for the first time on appeal to this court is not inflexible. When a consideration of a claim sought to be raised is necessary to a proper determination of a case, such rule will not be applied." (*Dation* v. *Ford Motor Co.* [1946], 314 Mich 152 at 160, 161.)

---

[1] CL 1948, § 417.4, as amended by PA 1965, No 44 (Stat Ann 1968 Rev § 17.223).

The second question raised by appellant is whether the appeal board properly applied the limitation contained in section 4.

Section 4 reads in pertinent part:

"Compensation shall not be payable for partial disability due to silicosis or other dust disease. In the event of temporary or permanent total disability or death from silicosis or other dust disease, notwithstanding any other provisions of this act, compensation shall be payable under this part to employees or to their dependents in the following manner and amounts:   *   *   *   In no event shall such compensation exceed an aggregate total of $10,500."

The positions of the parties may be summarized as follows: The appellant contends that: "The phrase 'silicosis or other dust disease' in section 4 was intended to apply to *any* dust disease causing disability resulting in compensation. The claimant here suffered a disability originating in a dust disease (dust induced sinusitis or rhinitis) and therefore should be limited by section 4." The appellee says: "The phrase 'silicosis or other dust disease' can have application only to *pulmonary* disabilities. The claimant here does not suffer from a pulmonary disability, therefore his claim should not be limited."

Neither argument yields in logic to the other.

Although we are satisfied that the dust diseases listed in 1937 were all concerned with pulmonary involvement, we consider this fact of less significance than the fact that they were and are the most common and likely forms of dust diseases.

Since this phrase obviously has application to occupational disabilities caused by some dust diseases, we will assume that claimant's disability here was an occupational disability caused by a dust

disease and determine whether it was a disease intended to be limited by section 4.

We do not read the limitation of section 4 to be applicable to *all* dust disease caused disabilities.

In 1937 the legislature made occupational diseases compensable for the first time and they did so guardedly. Only 31 specific diseases or conditions were made compensable and then only when the specific disease or condition was contracted in a specified manner. Of those listed diseases, three were dust diseases: phthisis, silicosis, and pneumoconiosis, and they, as all the rest, were compensable only if contracted in listed occupations.[2]

Even with this restricted coverage, the legislature feared that those dust diseases scheduled were so prevalent in the industries listed that they further limited their compensation (see appendix A). Section 4 was then added and first used the phrase "silicosis or other dust disease." Since the enumerated diseases were the only dust diseases compensable, the phrase as first used had to mean phthisis, silicosis, or pneumoconiosis and it covered those diseases only if contracted in the manner indicated in the schedule.[3]

---

[2] PA 1912 (1st Ex Sess), No 10, pt 7, § 1, as added by PA 1937, No 61.

[3] "Sec. 1. Definition. Whenever used in this act:

"(a) The word 'disability' means the state of being disabled from earning full wages at the work at which the employee was last employed;

"(b) The word 'disablement' means the event of becoming so disabled as defined in subparagraph (a) ;

"(c) The term 'occupational disease' means a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment.

"Sec. 2. The disablement of an employee resulting from an occupational disease or condition described in the following schedule shall be treated as the happening of a personal injury by accident within the meaning of this act and the procedure and practice provided in this act shall apply to all proceedings under this part, except where specifically otherwise provided herein:

By 1943 the fears of industrial economic hardship from the expanded compensation had not materialized (see appendix B). The schedule was abolished and coverage extended to include occupational disabilities as well as diseases.[4] However even with the broadened coverage of the act the section 4 limitation on "silicosis or other dust disease" was retained.

The 1937 amendment was intended to allow recovery for certain forms of industrial diseases and conditions, and the intent of section 4 of that amendment was to limit the amount of recovery for the most prevalent forms of dust diseases. The 1943 amendment encompassed the listed diseases and their causes but section 4 remained basically unchanged. There is no indication that the 1943 amendment which was entirely expansive in coverage intended to expand the restrictions of section 4.

This leads us to the conclusion that what the legislature feared in 1937 were the diseases which could swamp an industry—silicosis, phthisis, and pneumoconiosis—and that fear continued in 1943 as it does to this day. The fact that almost everyone in the mining, quarrying, and grinding industries is exposed to and probably has incurred (to some extent) these diseases, undoubtedly accounts for section 4's denial of partial disability for them and a ceiling on the amount recoverable for total disability.

| "Disabilities arising from | Caused by |
|---|---|
| * * * | * * * |
| "29. Stone worker's or grinder's phthisis | Quarrying, cutting, crushing, grinding or polishing of stone, or grinding or polishing of metal. |
| "30. Silicosis | Mining |
| "31. Pneumoconiosis | Quarrying, cutting, crushing, grinding or polishing of metal." |

(PA 1912 [1st Ex Sess], No 10, pt 7, §§ 1, 2, as added by PA 1937, No 61.)

[4] PA 1912 (1st Ex Sess), No 10, pt 7, § 1, as amended by PA 1943, No 245 (CL 1948, § 417.1 [Stat Ann 1960 Rev § 17.220]).

With this safeguard maintained, no reason appears why the legislature should be held to have been concerned over a rare or unusual disease.

On the contrary the legislative history of this act convinces us that "silicosis or other dust disease" as that phrase has always been used in section 4 is intended to limit compensation to silicosis, phthisis, pneumoconiosis, or other dust disease *posing such a general threat to the industry.*

Hence whenever an employer asserts that the limitation of section 4 should be applied to the dust disease causing the disability for which compensation is sought, such employer shall bear the burden of proving that such disease is so common and widespread as to present a threat to the industry comparable to silicosis, phthisis, or pneumoconiosis.

If the employer fails to establish this, his liability for compensation should not be limited by section 4.

In this case since no proofs were offered on the point, the matter is remanded to the appeal board for the taking of such proofs and the making of such determination.

No costs.

T. E. BRENNAN, C. J., and T. M. KAVANAGH and ADAMS, JJ., concurred with T. G. KAVANAGH, J.

### APPENDIX "A"

Report of the select committee, established by P.A 1935, No 164:

"The commission is of the opinion that the same reasons which justify the workmen's compensation act for accidents are applicable to disability or death due to occupational diseases. However, it is most evident from the testimony submitted to the commission at its various hearings, and from the study of the matter made by the individual members of the commission, that from the very nature of an occupational or industrial disease, it is extremely difficult to legislate fairly both as to the employee and the employer in regard to compensation to be paid for disability or death. Necessarily, there are certain diseases which occur to workmen in industry, but which are common to the public at large and the source or the origin of which it is. difficult to determine. We do not feel that industry

should be charged with disability or death resulting from such common diseases.

"Rather, we recommend that compensating legislation be passed which confines particular diseases to particular employments. We think that all parties concerned would be the most benefited by such legislation rather than simply by changing the word 'accident' as it appears in the workmen's compensation act to the word 'injury'. The so-called schedule plan to which we refer results in certainty. It avoids much litigation. It prevents delays and the raising of false hopes of the employee. Industry then knows the liability under which it must operate and it knows the conditions against which it must guard. At the same time the workman is by law told what the hazards of the particular employment are and is given an opportunity to co-operate with his employer in preventing disability or death. The cost to the employer is much more definite. The employer is not made liable for the normal exposures of healthful occupations. The schedule method has been quite generally followed in England and on the continent, as well as in the British dominions. It is in effect in numerous States in the United States.

"Aside from the proposal to change the word 'accident' to 'injury', and the proposal to adopt a schedule of occupational or industrial diseases, it has been suggested that we adopt an act granting compensation for occupational diseases and then defining the term 'occupational disease'. We have been unable to find any definition of the term which we believe would be satisfactory and have not succeeded in drafting one to our suiting. Various attempts along this line have been made in a number of States but apparently without any success.

"Therefore, it is our opinion that the Michigan legislature should pass a bill somewhat similar to that existing in New York and other States, setting forth the occupational diseases and the industries in which they may occur, including silicosis, asbestosis and other dust diseases, for which compensation for disability or death will be paid.   *   *   *

"One of the objections to our recommendations is that new occupational or industrial diseases are developing as industry finds new ways of accomplishing its desired results, and it is said that such a schedule will not meet those new occupational diseases without amendments by the legislature. To obviate this objection, we have incorporated into the bill language under which the department of labor and industry may on its own initiative hold public hearings to determine whether or not there are new and additional occupational disease hazards to which workmen are being subjected in certain industries similar to those compensated for in our proposed bill, and giving the department, if it so finds, the right to compensate for the resulting disability or death. We think we have drafted this section in such a way that there can be no valid constitutional objection to it.

"Before leaving this subject, it might be well for us to refer to the cost of what we propose doing. We have attempted to secure some definite information as to the cost of a so-called 'wide-open' act, which means changing the word 'accident' to 'injury' in the present compensation law. It is said that such a 'wide-open' act is in effect in Wisconsin and that it increased the cost to the employers of that State 2.14% in 1928 and 8.55% in 1935. Further, that in Wisconsin 90% of all indemnity and medical cost in diseases of occupation rep-

resents cost on account of silicosis cases. We find that the difficulty
with that statement is three-fold. First, the commission in Wisconsin has strictly construed that act; secondly, the employments
in which occupational diseases are found are very few; and, thirdly,
the increased cost is over the industry of that State as a whole. What
we should be interested in is the increased cost to those particular
industries in which occupational diseases are found. There we find
quite a different story. When the New York law was amended so as
to practically result in its being all-inclusive, the compensation rates,
for instance in the foundry industry, where you find disability due
to dust, increased so many times that the foundries not only found
themselves unable to buy compensation insurance but were forced to
discontinue business. It must be borne in mind that if the cost
of compensation insurance is increased to too great an extent in
Michigan, it may not only force certain industries out of the State,
but older men and those who have been engaged in the particular
industries affected are apt to find themselves without work.

"We have been assured that the bill which we propose, while it will
in some industries result in a considerable increase in the insurance
premiums, will not be confiscatory." (House Journal, 1937, pp 157,
158.)

## APPENDIX "B"

Report of the select committee established by H. R. No. 78, 1941:

"One change in this part of the proposed act abolishes the schedule
of 31 occupational diseases contained in the 1937 amendment to the
present law and also abolishes the requirement that injuries be accidental. The proposed law, in section 2 of part 2 deems compensable
any injury caused by a disease arising out of and in the course of
employment. It specifically excludes, however, 'ordinary diseases of
life' to which the general public is exposed (common colds, et cetera).

"Section 2 has been written with a view to overcoming the inadequacies and removing the inequities of a limited schedule of industrial diseases. It is especially inequable to limit the types of
industrial diseases. Unlike other types of industrial injuries, an industrial disease is contracted through no negligence on the part of
the employee. It derives completely from conditions of employment
over which the employee has no personal control. Section 2 protects
the employee in this respect and protects the employer through the
exclusion of common ailments. The language is simple and clear,
and should avoid litigation engendered by the complicated language
of the 1937 amendment.

"In advocating an all-inclusive industrial disease provision, the
committee considered carefully the costs involved by checking the
ratio of industrial disease costs to total compensation costs of
neighboring States which already have such provision. In Illinois
the ratio was 1.8% in 1941; in Wisconsin the 22-year average up to
1941 was 3.3%; in Indiana the 1942 ratio was 0.7%. The Michigan
ratio for 1941, excluding hernia cases, which are included in the
schedule under the 1937 amendment was 1.1%. Even with hernia
cases the ratio of the cost of all 31 diseases to total compensation
paid was only 1.9.%

"But the committee feels that this ratio can be reduced even
under the more liberal provisions of the proposed act. Experience
shows that extension of liability has a salutary effect on industrial
disease prevention." (House Journal, 1943, p 320.)

DETHMERS, J. (*dissenting*). For reasons set forth in my opinion in *Schoppe* v. *Calumet & Hecla, Inc.*, 382 Mich 450, it is my view that the limitations of section 4* referred to in the opinion of Mr. Justice T. G. KAVANAGH are applicable and that there is, therefore, no occasion for remand for the taking of proofs on the subject of whether the disease from which plaintiff suffers, causing his disability, is so common and widespread as to present a threat to the industry comparable to silicosis, phthisis, and pneumoconiosis. The statute speaks in plain language of "dust disease". Plaintiff suffers from dust disease. Whether it is widespread in the industry or not is immaterial.

The order of the appeal board should be affirmed and that of the Court of Appeals reversed.

KELLY and BLACK, JJ., concurred with DETHMERS, J.