FAULKNER CONSTRUCTION COMPANY v SILICOSIS, DUST DISEASE,
AND LOGGING INDUSTRY COMPENSATION FUND

Docket No. 194526. Submitted October 16, 1997, at Detroit. Decided
November 21, 1997, at 9:20 A.M. Leave to appeal sought.

Charlotte Dvorak, widow of Robert Dvorak, sought worker's compensation benefits for the death of her husband from a disease allegedly contracted in the course of his employment with Faulkner Construction Company. A Bureau of Worker's Disability Compensation magistrate determined that the decedent died from peritoneal mesothelioma caused by workplace exposure to asbestos and ordered the Silicosis, Dust Disease, and Logging Industry Compensation Fund to pay benefits pursuant to § 531(1) of the Worker's Disability Compensation Act, MCL 418.531(1); MSA 17.237(531)(1). On appeal by the fund, the Worker's Compensation Appellate Commission reversed that part of the magistrate's decision that ordered the fund to pay the benefits. The commission decided that in order for the fund to be liable for the benefits, Faulkner had to show that peritoneal mesothelioma was a dust disease that posed a general threat to its industry. The commission rejected Faulkner's request for a remand to the magistrate for an opportunity to make such a showing, concluding that the fund had argued the issue before the magistrate but Faulkner had not responded, and that the requirement of such a showing was not a severe departure from existing law or practice. Faulkner and its worker's compensation insurer, Wausau Insurance Companies, appealed by leave granted.

The Court of Appeals *held*:

Section 531(1) provides for reimbursement by the Silicosis, Dust Disease, and Logging Industry Compensation Fund of payments by worker's compensation insurers or self-insured employers of worker's compensation benefits for disability or death from silicosis or other dust disease. "Silicosis or other dust disease," as used in § 531(1), refers to silicosis, phthisis, pneumoconiosis, or other dust disease posing such a general threat to the industry. Where, as in this case, the disease in question is not silicosis, phthisis, or pneumoconiosis, the employer, in order to be reimbursed by the fund, must establish that the disease is so common and widespread as to present a threat to the industry.

Affirmed.

WORKER'S COMPENSATION — SILICOSIS AND DUST DISEASES — SILICOSIS, DUST DIS-
EASE, AND LOGGING INDUSTRY COMPENSATION FUND.

A worker's compensation insurer or self-insured employer that seeks
reimbursement from the Silicosis, Dust Disease, and Logging Indus-
try Compensation Fund for payment of worker's compensation
benefits for disability or death caused by a dust disease other than
silicosis, phthisis, or pneumoconiosis must establish that the dis-
ease is so common and widespread as to present a threat to the
employer's industry (MCL 418.531[1]; MSA 17.237[531][1]).

*Lacey & Jones* (by *Gerald M. Marcinkoski*), for
Faulkner Construction Company and Wausau Insur-
ance Companies.

*Frank J. Kelley*, Attorney General, *Thomas L.
Casey*, Solicitor General, and *Angelita Espino*, Assis-
tant Attorney General, for Silicosis, Dust Disease, and
Logging Industry Compensation Fund.

Before: SAAD, P.J., and O'CONNELL and M. J.
MATUZAK*, JJ.

M. J. MATUZAK, J. Defendants Faulkner Construction
Company and Wasau Insurance Companies (hereinaf-
ter Faulkner) appeal by leave granted from a decision
by the Worker's Compensation Appellate Commission
(WCAC). The WCAC reversed that part of the magis-
trate's finding that the Silicosis, Dust Disease, and
Logging Industry Compensation Fund (the fund) was
responsible for paying plaintiff's benefits under
§ 531(1) of the Worker's Disability Compensation Act
(WDCA), MCL 418.531(1); MSA 17.237(531)(1). The
WCAC concluded that the fund was not liable because
Faulkner had not shown that the disease that afflicted
the plaintiff's decedent, peritoneal mesothelioma,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

posed a threat to the industry by virtue of payment of worker's compensation. We affirm.

Plaintiff's decedent was employed as an asbestos insulation worker/pipe coverer from 1947 through March 1986. He worked for Faulkner from October 1972 through March 1986. His work exposed him to asbestos fibers. On January 6, 1990, plaintiff's decedent died from mesothelioma of the peritoneum,[1] a rare or unusual form of cancer related to asbestos exposure. He was diagnosed as suffering from peritoneal mesothelioma in August 1989, and he applied for a hearing with the Worker's Disability Compensation Bureau on the basis of peritoneal mesothelioma and asbestosis, both of which he alleged were caused by his workplace exposure to asbestos dust and fibers.

The case was submitted to the magistrate on briefs, stipulated facts, and the depositions of medical experts. The physicians agreed that decedent had peritoneal mesothelioma, a cancer of the tissue lining the abdominal cavity. Two of the medical experts agreed that the peritoneal mesothelioma was caused by decedent's workplace exposure to asbestos. Those same experts disagreed over the issue whether decedent had also suffered from pulmonary asbestosis.[2] The magistrate found that the medical testimony indicated "that decedent plaintiff's mesothelioma was caused by his work place exposure to asbestos, and that his death was ultimately a result of that mesothelioma and the work environment caused the illness."

---

[1]  Also referred to as peritoneal mesothelioma.

[2]  The third physician, a pathologist, testified that peritoneal mesothelioma was related to exposure to asbestos and that it was possible that decedent's cancer was caused by workplace exposure. The pathologist did not investigate decedent's possible asbestosis.

In his findings, the magistrate concluded "that the plaintiff was disabled and ultimately died on the 6th day of January, 1990, as a result of an occupational/industrial disease of peritoneal mesothelioma." The magistrate also found "that the Silicosis & Dust Disease Fund will be responsible for benefits pursuant to the Workers' Disability Compensation Statute 418.531(1) [MCL 418.531(1); MSA 17.237(531)(1)]."

The fund appealed the magistrate's decision to the WCAC, asserting that in order to recover against the fund under § 531(1), Faulkner was required to show that peritoneal mesothelioma posed a general threat to its industry. The WCAC agreed with the fund's argument, relying on *Stottlemeyer v General Motors Corp*, 399 Mich 605; 250 NW2d 486 (1977), and *Felcoskie v Lakey Foundry Corp*, 382 Mich 438; 170 NW2d 129 (1969). The WCAC noted that the fund argued this issue before the magistrate, yet Faulkner did not present any evidence that would indicate that peritoneal mesothelioma posed a threat to its industry, nor did the magistrate address this issue in his written findings. The WCAC disagreed with Faulkner's assertion that this approach was a severe departure from existing law and practice, and denied its request for a remand to allow proofs with regard to the issue whether decedent's disease posed a threat to the industry.

On appeal, Faulkner argues that the WCAC incorrectly interpreted and applied MCL 418.531(1); MSA 17.237(531)(1) by requiring that it prove a threat to the industry. We disagree.

Faulkner correctly points out that the requirement does not appear in the express language of § 531(1).

Section 531(1)(1) of the WDCA, MCL 418.531(1);   MSA 17.237(531)(1),   provides in relevant part:

> In each case in which a carrier including a self-insurer has paid, or causes to be paid, compensation for disability or death from silicosis or other dust disease, or for disability or death arising out of and in the course of employment in the logging industry, to the employee, the carrier including a self-insurer shall be reimbursed from the silicosis, dust disease, and logging industry compensation fund . . . .

The purpose of the fund is to protect certain industries from the financial jeopardy posed by the possibility of numerous worker's compensation claims based on dust diseases that are inherent to the nature of the industry. *Stottlemeyer, supra,* 611-612; *Nelligan v Gibson Insulation Co,* 193 Mich App 274, 218; 483 NW2d 460 (1992).   In *Stottlemeyer,* our Supreme Court noted:

> The overriding point is that the statute as it evolved over the years represents an attempt by the Legislature to compensate injured employees while protecting certain Michigan employers threatened by ruinous compensation claims. [399 Mich 611.]

In *Felcoskie, supra,* our Supreme Court found that, based upon legislative history:

> "[S]ilicosis or other dust disease" as that phrase has always been used [in the predecessor of the current statute] is intended to limit compensation to silicosis, phthisis, pneumoconiosis, or other dust disease *posing such a general threat to the industry.*
>
> Hence whenever an employer asserts that the limitation of [the predecessor statute] should be applied to the dust disease causing the disability for which compensation is sought, such employer shall bear the burden of proving that such disease is so common and widespread as to present a

threat to the industry comparable to silicosis, phthisis, or pneumoconiosis. [382 Mich 446 (emphasis in original).]

In *Stottlemeyer*, the Court explained the reasoning behind the *Felcoskie* holding and the need to continue that rule as follows:

> If *Felcoskie* were abandoned, any employer could call on the fund resources when an employee suffered from a compensable dust disease, and the purpose of the fund would be thwarted. The fund was created to cushion threatened industries, not to limit the liability of all employers if by happenstance an employee should suffer from a dust disease.
>
> We therefore hold that "other dust disease" as used in MCL 417.5; MSA 17.223(1) is limited to silicosis, phthisis, pneumoconiosis, *or other dust diseases posing a threat to the industry* comparable to the "mining, quarrying and grinding industries". *The burden of proving that the disease is so common and widespread as to present such a threat remains with the employer.* [399 Mich 612 (emphasis added).]

Under *Felcoskie* and *Stottlemeyer*, Faulkner bore the burden of showing that decedent's occupational disease, peritoneal mesothelioma, was so common and widespread as to present a threat to the industry. The WCAC did not err in its interpretation or application of § 531(1).

Faulkner further argues that the magistrate found the fund liable because decedent's death was linked to asbestosis, a form of pneumoconiosis, and that pneumoconiosis is a recognized "dust disease" for which the fund is responsible for benefits without any showing that the occupational disease posed a threat to the industry. Faulkner contends that the WCAC committed an error of law by finding that it bore the bur-

den of proving a threat to its industry despite the fact that plaintiff's decedent died from one of the three diseases specifically listed in *Felcoskie* and *Stottlemeyer*, pneumoconiosis. It is not necessary for us to address this issue because neither the magistrate nor the WCAC concluded that decedent suffered from asbestosis or any other form of pneumoconiosis. Although it was asserted that decedent suffered from asbestosis in addition to peritoneal mesothelioma, the magistrate found only that decedent died "as a result of an occupational/industrial disease of peritoneal mesothelioma." The parties did not stipulate the existence of asbestosis, nor did the medical witnesses agree that decedent had asbestosis, let alone that it caused his mesothelioma. In fact, the medical witnesses could not conclusively testify that decedent's mesothelioma was caused by the presence of asbestos fibers in decedent's lungs as opposed to his intestinal tract. Since there was no finding or conclusive evidence showing that decedent died from silicosis, phthisis, or pneumoconiosis, whether the employer still bears the burden of proving a threat to industry when one of those diseases is involved is simply not relevant to this case.

Finally, Faulkner asserts that the WCAC's interpretation of § 531(1) so as to require proof of a threat to its industry was a radical departure from the commission's prior approach in similar cases, so the proper remedy would be to remand the case to give Faulkner an opportunity to prove a threat to its industry. We see no reason to remand. As noted by the WCAC, the fund raised the issue at the hearing. The *Felcoskie* and *Stottlemeyer* cases spelled out the law with

regard to this issue long before Faulkner's hearing before the magistrate.

Affirmed.