CHRYSLER CORPORATION v SILICOSIS, DUST DISEASE, AND
LOGGING INDUSTRY COMPENSATION FUND

Docket No. 223923. Submitted July 5, 2000, at Detroit. Decided November
3, 2000, at 9:15 A.M.

William A. Alston sought worker's compensation benefits, claiming
that he had become disabled as a result of exposure to dust during
the course of his employment with Chrysler Corporation. A
worker's compensation magistrate found that the claimant was dis-
abled by work-related pneumoconiosis and asbestosis, ordered
Chrysler to pay benefits, and ordered the Silicosis, Dust Disease,
and Logging Industry Compensation Fund to reimburse Chrysler
pursuant to subsection 531(1) of the Worker's Disability Compensa-
tion Act, MCL 418.531(1); MSA 17.237(531)(1). The fund appealed
to the Worker's Compensation Appellate Commission (WCAC). The
WCAC determined that Chrysler was not entitled to reimbursement
by the fund because Chrysler had failed to show that the work-
related dust diseases from which the plaintiff suffered were a
threat to the automobile industry. Chrysler sought leave to appeal
to the Court of Appeals. The Court of Appeals denied leave to
appeal. The Supreme Court, in lieu of granting leave to appeal,
remanded the matter to the Court of Appeals for consideration as
on leave granted. 461 Mich 923 (1999).

The Court of Appeals held:

1. Subsection 531(1) provides for reimbursement by the Silicosis,
Dust Disease, and Logging Industry Compensation Fund of pay-
ments made by worker's compensation insurers or self-insured
employers of worker's compensation benefits for disability or death
from "silicosis or other dust disease." Silicosis or other dust dis-
ease, as used in subsection 531(1), refers to silicosis, phthisis,
pneumoconiosis, or other dust diseases when those conditions
pose the same general economic threat to an industry that silicosis,
phthisis, or pneumoconiosis pose to mining, quarrying, and grind-
ing industries. Accordingly, silicosis, phthisis, or pneumoconiosis
are compensable only when they arise in the course of employment
of an industry involved in mining, quarrying, or grinding or when it
is shown that they pose the same kind of economic threat to an
industry that they pose to mining, quarrying, and grinding indus-

tries. The burden of establishing such an economic threat to an industry rests with the party seeking reimbursement from the fund.

2. The WCAC properly held that Chrysler had the burden of showing that pneumoconiosis or asbestosis was an economic threat to the automobile industry. Because Chrysler neither claimed nor proved that pneumoconiosis or asbestosis was an economic threat to the automobile industry, the WCAC properly rejected Chrysler's claim for reimbursement from the fund.

Affirmed.

WORKER'S COMPENSATION — SILICOSIS AND DUST DISEASES — SILICOSIS, DUST DISEASE, AND LOGGING INDUSTRY COMPENSATION FUND — BURDEN OF PROOF.

A worker's compensation insurer or self-insured employer that seeks reimbursement from the Silicosis, Dust Disease, and Logging Industry Compensation Fund for payment of worker's compensation benefits for a disability caused by a dust disease in an industry other than the mining, quarrying, or grinding industries must show that the claimant was disabled by silicosis, phthisis, pneumoconiosis, or some other dust disease and that the dust disease from which the claimant suffers poses the same general economic threat to the industry in which the claimant was employed that silicosis, phthisis, or pneumoconiosis pose to mining, quarrying, and grinding industries (MCL 418.531[1]; MSA 17.237[531][1]).

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for Chrysler Corporation.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Rose A. Houk* and *Mitchell J. Wood,* Assistant Attorneys General, for the Silicosis, Dust Disease, and Logging Industry Compensation Fund.

Before: WHITE, P.J., and DOCTOROFF and O'CONNELL, JJ.

PER CURIAM. This case is before us as on leave granted pursuant to a remand from the Supreme Court. 461 Mich 923 (1999). Defendant Chrysler Corporation appeals from a decision of the Worker's Compensation Appellate Commission (WCAC). The

WCAC reversed the magistrate's decision finding that the Silicosis, Dust Disease, and Logging Industry Compensation Fund (the fund) was responsible for paying plaintiff's benefits under subsection 531(1) of the Worker's Disability Compensation Act (WDCA), MCL 418.531(1); MSA 17.237(531)(1). We affirm the WCAC's decision.

Our review of a decision of the WCAC is limited to whether the WCAC exceeded its authority or committed an error of law. *Luster v Five Star Carpet Installations, Inc*, 239 Mich App 719, 725; 609 NW2d 859 (2000). The findings of fact made or adopted by the WCAC within the scope of its powers are conclusive on appeal in the absence of fraud. MCL 418.861a(14); MSA 17.237(861a)(14); *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 701; 614 NW2d 607 (2000); *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000). "If there is any evidence supporting the WCAC's factual findings, and if the WCAC did not misapprehend its administrative appellate role in reviewing decisions of the magistrate, then the courts must treat the WCAC's factual findings as conclusive." *Mudel*, *supra* at 709-710. However, a decision of the WCAC may be reversed if it is based on erroneous legal reasoning or the wrong legal framework. *DiBenedetto*, *supra* at 401-402.

Defendant Chrysler Corporation contends that the magistrate found that plaintiff was disabled by pneumoconiosis and that the WCAC made an error of law in requiring that Chrysler prove that pneumoconiosis is a threat to the automobile industry before it could obtain reimbursement from the fund. We disagree.

The magistrate found that plaintiff was disabled by a work-related dust disease resulting from his expo-

sure to asbestos. The magistrate did not expressly state the type of dust disease from which plaintiff suffered. However, the magistrate stated in her findings that she accepted the diagnoses and conclusions of Dr. Michael Kelly and Dr. Clyde Wu. The magistrate noted that Dr. Kelly diagnosed plaintiff with emphysema, mixed dust pneumoconiosis, and diabetes mellitus. As noted by the magistrate, Dr. Kelly opined that the predominant pathology was emphysema, but that he also found "sufficient criteria to indicate asbestos as part of the causative factor." Dr. Kelly could not determine whether cigarette smoking or plaintiff's work exposures to asbestos was more important to the development of plaintiff's disability, but commented that plaintiff's work exposures were "a very significant factor in the development of plaintiff's emphysema as well as his pneumoconiosis."

With respect to Dr. Wu's conclusions, the magistrate noted that Dr. Wu diagnosed plaintiff with "a significant degree of pulmonary emphysema, and some degree of asbestosis."[1] The magistrate noted Dr. Wu's finding that plaintiff's work exposures caused the asbestosis and that plaintiff was disabled as the result of the emphysema and the asbestosis. While Dr. Wu opined that the basic disability was caused by the emphysema, which was caused by cigarette smoking, he further concluded that plaintiff's "degree of asbestosis was significant and would in and of itself cause a decrease in lung function."

By accepting the conclusions of Drs. Kelly and Wu, the magistrate essentially found that plaintiff's disabil-

---

[1] Asbestosis is a form of pneumoconiosis. *Faulkner Constr Co v Silicosis, Dust Disease, & Logging Industry Compensation Fund*, 226 Mich App 503, 508; 574 NW2d 685 (1997).

ity was caused, at least in part, by mixed dust pneu-moconiosis, diagnosed by Dr. Kelly, and asbestosis, diagnosed by Dr. Wu. Chrysler did not appeal the magistrate's finding that plaintiff was disabled by a work-related dust disease or the magistrate's accept-ance of the conclusions of Drs. Kelly and Wu. How-ever, the WCAC noted that the testimony of the medical experts supported the magistrate's finding that plain-tiff suffered from a work-related pulmonary disease. The WCAC then determined that Chrysler was not enti-tled to collect from the fund because it failed to show that the work-related diseases from which plaintiff suffered were a threat to the automobile industry.

The reimbursement of employers by the fund is governed by subsection 531(1) of the WDCA, MCL 418.531(1); MSA 17.237(531)(1), which provides:

> In each case in which a carrier including a self-insurer has paid, or causes to be paid, compensation for disability or death from *silicosis or other dust disease*, or for disabil-ity or death arising out of and in the course of employment in the logging industry, to the employee, the carrier includ-ing a self-insurer shall be reimbursed from the silicosis, dust disease, and logging industry compensation fund for all sums paid in excess of $12,500.00 for personal injury dates before July 1, 1985, and for all compensation paid in excess of $25,000.00 or 104 weeks of weekly compensation, which-ever is greater, for personal injury dates after June 30, 1985, excluding payments made pursuant to sections 315, 319, 345, and 801(2), (5), and (6) which have been paid by the carrier including a self-insurer as a portion of its liability. [Emphasis added.]

The requirement that an employer prove that a dis-abling disease or condition is a threat to the industry at issue before it may be reimbursed from the fund is not found in the language of the statute, but stems

from case law interpreting the phrase "silicosis or other dust disease." This language was first addressed in *Felcoskie v Lakey Foundry Corp*, 382 Mich 438; 170 NW2d 129 (1969), in which our Supreme Court examined the legislative history of compensation for disabling dust diseases. The Legislature first made occupational diseases compensable in 1937 when it made thirty-one specific diseases or conditions compensable if they were contracted in a specific manner in one of the listed occupations. *Id.* at 444. Three dust diseases, phthisis, silicosis, and pneumoconiosis, were included in the list if they were contracted in the mining, quarrying, or grinding industries.[2] *Id.* at 445. Because of the Legislature's fear that the prevalence of the listed dust diseases posed an economic threat to the listed industries, the Legislature enacted § 4 of the now-repealed Workmen's Compensation Act, MCL 417.4; MSA 17.223, which limited compensation for disability due to "silicosis or other dust disease" to cases of total, not partial, disability. *Felcoskie, supra* at 443. Because the only dust diseases compensable at the time § 4 was enacted were phthisis, silicosis, and pneumoconiosis, the Court held that the phrase "silicosis or other dust disease" as used in § 4 necessarily referred only to phthisis, silicosis, and pneumoconiosis. *Id.* at 444.

When the Workmen's Compensation Act was amended in 1943 to broaden coverage by eliminating the schedule of diseases and extending coverage to

---

[2] The 1937 legislation made silicosis compensable if contracted in the mining industry, phthisis if caused by "[q]uarrying, cutting, crushing, grinding or polishing of stone, or grinding or polishing of metal," and pneumoconiosis if caused by "[q]uarrying, cutting, crushing, grinding, or polishing of metal." See *Felcoskie, supra* at 444, n 3.

occupational disabilities as well as diseases, the phrase "silicosis or other dust disease" was retained. Thus, the Supreme Court concluded that the phrase "silicosis or other dust disease" was intended "to limit compensation to silicosis, phthisis, pneumoconiosis, or other dust disease *posing such a general threat to the industry.*" *Id.* at 446 (emphasis in *Felcoskie*). The Court further concluded that, whenever an employer sought to assert the total disability requirement of MCL 417.4; MSA 17.223, "such employer shall bear the burden of proving that such disease is so common and widespread as to present a threat to the industry comparable to silicosis, phthisis, or pneumoconiosis." *Felcoskie, supra* at 446.

In 1966, § 4 of the Workmen's Compensation Act, MCL 417.4; MSA 17.223, discussed in *Felcoskie*, was replaced by § 5, MCL 417.5; MSA 17.223(1), which provided that employees suffering from silicosis or other dust diseases would receive the same benefits as other disabled employees and established a reimbursement scheme for employers through the Silicosis and Dust Disease Fund. *Stottlemeyer v General Motors Corp,* 399 Mich 605, 611-612; 250 NW2d 486 (1977). Noting that the purpose of § 5 was the same as the purpose of § 4, in that both sections were concerned with providing benefits to disabled workers while protecting certain employers from an undue financial burden, the Court held that the construction of the phrase "silicosis or other dust disease" that was set forth in *Felcoskie* with respect to § 4, was also applicable to § 5. *Stottlemeyer, supra.* Thus, the Court held that, as used in § 5, the phrase "other dust disease" "is limited to silicosis, phthisis, pneumoconiosis, or other dust diseases posing a threat to the

industry comparable to the 'mining, quarrying, and grinding industries.' " *Id.* at 612. In other words, the Court essentially acknowledged that silicosis, phthisis, and pneumoconiosis present an economic threat to the mining, quarrying, and grinding industries and, therefore, an employer need not prove a threat to those industries before it may collect from the fund.

The Workmen's Compensation Act, including § 5, was repealed in 1968, and was replaced by the WDCA. Subsection 531(1) of the WDCA, MCL 418.531(1); MSA 17.237(531)(1), retained the "silicosis or other dust disease" language. Chrysler contends that, because the magistrate found that plaintiff suffered from pneumoconiosis, it was not required to prove an economic threat to the automobile industry in order to be entitled to reimbursement from the fund.

However, on the basis of *Felcoskie* and *Stottlemeyer*, we conclude that silicosis, phthisis, and pneumoconiosis are inherently compensable only when arising in the course of employment in an industry involved in mining, quarrying, or grinding. Actual proof of an economic threat to the industry is required for silicosis, phthisis, or pneumoconiosis not arising in those industries and for any other dust disease. This construction furthers the purpose of the fund, which is "to protect certain industries from the financial jeopardy posed by the possibility of numerous worker's compensation claims based on dust diseases that are inherent to the nature of the industry." *Faulkner Constr Co v Silicosis, Dust Disease, & Logging Industry Compensation Fund,* 226 Mich App 503, 507; 574 NW2d 685 (1997).[3] As noted in *Stot-*

---

[3] In *Faulkner,* whether a listed disease, such as pneumoconiosis, must be shown to pose a threat to the industry involved, if other than the min-

*tlemeyer*, "[t]he fund was created to cushion threatened industries, not to limit the liability of all employers if by happenstance an employee should suffer from a dust disease." *Stottlemeyer, supra* at 612.

Therefore, in the instant case, Chrysler was required to show that pneumoconiosis or asbestosis was an economic threat to the automobile industry. Chrysler neither claimed nor proved that pneumoconiosis or asbestosis was a threat to the automobile industry. Therefore, the WCAC properly rejected Chrysler's claim for reimbursement from the fund.

Affirmed.

---

ing, quarrying, or grinding industries, was expressly left undecided. *Faulkner, supra* at 508-509.