HILL v FAIRCLOTH MANUFACTURING COMPANY
FRAZZINI v TOTAL PETROLEUM

Docket Nos. 221335, 223694. Submitted December 6, 2000, at Detroit.
Decided May 11, 2001, at 9:05 A.M. Leave to appeal sought.

Jack D. Hill, whose supervisor at Faircloth Manufacturing Company
had instructed him to transport in a Faircloth truck certain items
from Faircloth's premises to another location, sustained disabling
injuries when the truck he was driving collided with another vehi-
cle after he lost consciousness during a diabetic seizure. Hill peti-
tioned the Bureau of Worker's Disability Compensation for an
award of benefits, and Automobile Club of Michigan, which had
paid no-fault benefits to Hill, petitioned for reimbursement by Fair-
cloth and its insurer, Accident Fund Company. Hill died while his
petition was pending and Edward F. Hill, as personal representative
of Jack Hill's estate, was substituted in place of Jack Hill. A
worker's compensation magistrate denied the requests, concluding
that Hill's employment did not cause, contribute to, or aggravate
his injuries. The Worker's Compensation Appellate Commission
affirmed the magistrate's decision, opining that Hill's injuries arose
exclusively out of his diabetic condition because driving is an
everyday activity and work-related driving does not pose an
increased risk of injury at work. Automobile Club of Michigan
appealed by leave granted.

Jeffrey L. Frazzini, a manager of a Total Petroleum gasoline station,
drove his own automobile from the station during his work shift to
make a bank deposit and obtain supplies for the station. Frazzini's
vehicle left the road and hit an embankment after Frazzini lost con-
sciousness during a diabetic seizure. Frazzini, who sustained disa-
bling injuries in the accident, petitioned the worker's compensation
bureau for benefits, and AAA of Michigan, which had paid no-fault
benefits to Frazzini, petitioned for reimbursement by Total. A
worker's compensation magistrate awarded benefits, deciding that
Frazzini had sustained a work-related injury. The WCAC reversed the
magistrate's decision for the same reasons it affirmed the denial of
worker's compensation to Hill. Frazzini appealed by leave granted,
and his appeal was consolidated with Automobile Club of Michi-
gan's appeal in the case involving Hill.

The Court of Appeals *held*:

These cases are analogous to those in which an employee falls or collapses at work for a reason not related to work, but suffers greater injuries because the employment increased the dangers of falling or collapsing, e.g., falling or collapsing for a reason unrelated to work while standing on a ladder or near machinery. Such aggravated injuries are compensable under subsection 301(1) of the Worker's Disability Compensation Act, MCL 418.301(1). If Hill and Frazzini drove their vehicles for job-related purposes and if having a diabetic seizure while driving aggravated or otherwise increased their injuries, then those aggravated injuries directly caused by driving are compensable under the worker's compensation act.

The case involving Hill must be reversed and remanded to the magistrate for further findings of fact. The case involving Frazzini must be reversed and remanded to the WCAC for further proceedings.

Reversed and remanded.

WORKER'S COMPENSATION — ACCIDENTS CAUSED BY IDIOPATHIC CONDITIONS — INCREASED RISK OF INJURY — AGGRAVATION OF INJURY.

Injury sustained by an employee in an accident that occurs during work-related activity but is triggered by an idiopathic condition, i.e., a disease or condition that is strictly personal to the employee and unrelated to the employment, is compensable under the worker's compensation act where the work-related activity increased the risk of injury or aggravated the injury (MCL 418.301[1]).

*Evans, Pletkovic & Rhodes, P.C.* (by *Jane S. Colombo*), for Automobile Club of Michigan.

*Richard B. Jenks* (*Daryl Royal*, of counsel) for Jeffrey L. Frazzini.

*Garan Lucow Miller, P.C.* (by *Daniel S. Saylor* and *Michael D. Wade*), for AAA of Michigan.

*Lacey & Jones* (by *Gerald M. Marcinkoski*), for Faircloth Manufacturing Company and Accident Fund Company.

*Roberts, Betz & Bloss, P.C.* (by *Gregory A. Block* and *Marshall W. Grate*), for Total Petroleum, Inc.

Before: Saad, P.J., and White and Hoekstra, JJ.

Saad, P.J.

I. NATURE OF THE CASE

In these consolidated cases, employees petitioned for worker's compensation benefits for personal injuries they sustained in vehicular accidents. We granted leave to appeal in both cases to consider the narrow legal issue whether an employee may recover worker's compensation benefits for injuries sustained in a vehicular accident where the employee's diabetic seizure caused the accident.

In *Hill*, plaintiff's decedent, Jack Hill,[1] was driving his employer's delivery truck when he suffered a diabetic seizure, causing a collision with another truck. The magistrate did not decide whether the accident occurred during the course of Hill's employment because he found, and the Worker's Compensation Appellate Commission (WCAC) affirmed, that Hill's personal or "idiopathic"[2] seizure caused the accident and, therefore, Hill's injuries, including multiple bone fractures and a concussion, did not "arise out of" his employment.[3] In *Frazzini*, plaintiff claims he was

---

[1] Hill died from an apparent, unrelated heart attack on December 31, 1991, and was, therefore, not available to testify at trial.

[2] In worker's compensation law, "[a]n idiopathic fall is one resulting from some disease or infirmity that is strictly personal to the employee and unrelated to his employment." *Ledbetter v Michigan Carton Co*, 74 Mich App 330, 333; 253 NW2d 753 (1977).

[3] The Worker's Disability Compensation Act, MCL 418.301(1), provides:

An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act. In the case of death resulting from the personal injury to the employee, compensation shall be paid to the em-

driving his automobile on a work-related errand when he suffered a diabetic insulin reaction. Frazzini sustained a serious hip injury when his vehicle left the road, hit several traffic signs and struck an embankment. The magistrate awarded benefits, finding that Frazzini suffered injuries "arising out of and in the course of employment," but the WCAC reversed for the same reasons articulated in *Hill*, that Frazzini's idiopathic seizure caused the accident and, therefore, his injuries did not arise out of his employment.[4]

The WCAC characterized these claims as "personal risk" cases for which benefits are available only if employment poses risks to the employee greater than the common risks of everyday life. The WCAC reasoned that driving is an everyday activity and, therefore, that the injuries in the instant cases are not compensable. We expressly reject this reasoning and, accordingly, we reverse the WCAC's decision in both cases.

Plaintiffs admit that the seizures caused the accidents but contend that, because employment placed them in a position that increased the dangerous effects of the seizures and aggravated the injuries, the injuries arose out of employment within the meaning of the Worker's Disability Compensation Act, MCL 418.301(1). Plaintiffs, therefore, do not seek compensation for personal injuries related solely to the diabetic illnesses, but claim that the employers should

---

ployee's dependents as provided in this act. Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions that resulted in the employee's disability or death.

[4] In both cases, intervening plaintiffs, Automobile Club of Michigan and AAA of Michigan, appeal by leave granted.

compensate for injuries stemming from the traffic collisions. We hold that, if the accidents occurred in the course of employment, even if caused by an idiopathic condition, employment-related driving constitutes an increased risk that aggravated the injuries. Accordingly, injuries attributable to the collisions "arose out of" employment, entitling the claimants to worker's compensation benefits.

## II. FACTS AND PROCEEDINGS

### A. *HILL v FAIRCLOTH MANUFACTURING CO*

On January 25, 1991, Jack Hill's supervisor directed him to transport parts to a treatment facility located approximately two miles from defendant-employer's business location. Hill, an insulin-dependent diabetic, left the Faircloth plant alone, driving a company truck. Some distance beyond the exit Hill should have taken to reach the treatment facility, Hill collided with the back of a truck hauling steel. Witnesses reported to police that Hill looked as though he was convulsing from a seizure just before the accident. Hill stated that he remembered driving, but could not remember the collision. Hill sustained injuries in the accident that prevented him from performing his job at Faircloth.

Before his death, Hill filed an application for worker's compensation benefits and Automobile Club of Michigan filed a petition seeking reimbursement of no-fault benefits paid to Hill after the accident. After Hill died, his petition was voluntarily withdrawn and Automobile Club of Michigan filed a new petition on July 7, 1992. Following trial, the magistrate denied benefits, specifically concluding that Hill's "employ-

ment with [Faircloth] did not cause, contribute to or aggravate his injuries at all" and, therefore, Hill "did not sustain a work-related personal injury as alleged in his petition for benefits."

The WCAC affirmed, rejecting intervening plaintiff's argument that Hill's employment increased the risk of injury posed by his diabetic condition. The WCAC labeled this a "personal risk case" that requires a showing that Hill's work contributed to the injury in some manner beyond the common risks of daily life. The WCAC opined that "the mere act of driving, without proof of an increased risk beyond the normal risks of driving," cannot constitute an "increased risk" presented by employment. Because driving is an everyday activity, the WCAC reasoned, the magistrate properly found that plaintiff's injuries arose "exclusively on account of his personal, diabetic condition."

### B. *FRAZZINI v TOTAL PETROLEUM, INC*

On May 19, 1994, Jeffrey L. Frazzini, manager of a Total gasoline station, left work in his own vehicle to make a bank deposit. Frazzini also planned to drive to a Wal-Mart store to buy supplies and then to return to work. Frazzini made the bank deposit, but then drove several miles past the nearby Wal-Mart store. His vehicle eventually left the road, crashed into street signs, and came to a stop after hitting an embankment. Frazzini could not remember what happened during the accident; however, like Hill, Frazzini suffered from diabetes and medical testimony established that Frazzini had an insulin reaction while driving.

In May 1996, Frazzini filed a claim for worker's compensation benefits and AAA of Michigan intervened to recoup no-fault benefits it paid Frazzini following the accident. Although Frazzini's accident occurred several miles from his destination, the magistrate concluded that his injuries arose in the course of his employment because he was on a work-related errand. The magistrate rejected Total Petroleum's argument that Frazzini merely suffered an "idiopathic" injury related to his diabetic condition, reasoning that driving increased the danger involved in Frazzini's diabetic seizure and, therefore, held that Frazzini's injury "arose out of" his employment. The WCAC reversed, finding that Frazzini failed to establish a connection between his employment and his injury and that Frazzini failed to show his employment exposed him to a risk greater than those presented in everyday driving.

### III. ANALYSIS[5]

For an injury to result in a compensable disability, an employee must suffer an injury "arising out of and

---

[5] This Court reviews de novo questions of law involved in a final order of the WCAC. *Boardman v Dep't of State Police*, 243 Mich App 351, 356; 622 NW2d 97 (2000). As this Court recently set forth:

Our review of a decision of the WCAC is limited to whether the WCAC exceeded its authority or committed an error of law. The findings of fact made or adopted by the WCAC within the scope of its powers are conclusive on appeal in the absence of fraud. "If there is any evidence supporting the WCAC's factual findings, and if the WCAC did not misapprehend its administrative appellate role in reviewing decisions of the magistrate, then the courts must treat the WCAC's factual findings as conclusive." *Mudel [v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 709-710; 614 NW2d 607 (2000)]. However, a decision of the WCAC may be reversed if it is based on erroneous legal reasoning or the wrong legal framework. [*Chrysler*

in the course of employment . . . ." MCL 418.301(1). However, not every injury that occurs in the course of a plaintiff's employment is an injury that *arises out of his employment. Ledbetter v Michigan Carton Co*, 74 Mich App 330, 334; 253 NW2d 753 (1977); *McClain v Chrysler Corp*, 138 Mich App 723; 360 NW2d 284 (1984).

Similar to the instant cases, *Ledbetter* and *McClain* concern employees who suffered seizures or fainting spells while at work. However, in *Ledbetter* and *McClain*, the plaintiffs' injuries occurred when they fell on a level, concrete floor after losing consciousness. In both cases, this Court determined that predominantly personal factors caused the falls and that the plaintiffs' employment did not contribute to their injuries. Thus, these cases recognize the general rule that an injury is not necessarily compensable merely because it occurs on an employer's premises. *Ledbetter, supra* at 334-335.

These cases also represent that line of cases sometimes referred to as "level fall" or "level floor" cases, in which an employee's idiopathic condition causes the employee to fall on level ground. Relying on Larson, Workmen's Compensation Law, the *Ledbetter* Court recognized that in "personal risk" or "idiopathic fall" cases, "[u]nless some showing can be made that the location of the fall aggravated or increased the injury, compensation benefits should be denied." *Id.* at 335-336. Referring to Larson, the *Ledbetter* Court

---

*Corp v Silicosis Fund*, 243 Mich App 201, 203; 622 NW2d 795 (2000) (some citations omitted).]

In the instant case we conclude that the WCAC applied erroneous legal reasoning and operated within an incorrect legal framework.

drew a distinction between idiopathic falls on a "level floor" and idiopathic falls from platforms or ladders or onto a piece of machinery. *Id.* at 337. Indeed, the Larson treatise recognizes a general agreement among the states that most idiopathic falls are compensable, although some uncertainty remains concerning idiopathic falls on a level floor:

> When an employee, solely because of a nonoccupational heart attack, epileptic fit, or fainting spell, falls and sustains a skull fracture or other injury, the question arises whether the skull fracture (as distinguished from the internal effects of the heart attack or disease, which of course are not compensable) is an injury arising out of the employment.
>
> The basic rule, on which there is now general agreement, is that the effects of such a fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle. The currently controversial question is whether the effects of an idiopathic fall to the level ground or bare floor should be deemed to arise out of the employment." [1 Larson, Workers' Compensation Law, § 9.01[1], p 9-2.]

In the next subsection, 9.01[2], which addresses "falls onto dangerous objects," the treatise describes facts similar to those in the instant cases:

> Awards are uniformly made when the employee's idiopathic loss of his or her faculties took place while he or she was in a moving vehicle, as in the case of a delivery worker whose job required the employee to be at the wheel of a truck and who "blacked out" during an asthmatic attack and went into the ditch, and of an employee who was on a motor scooter when he lost consciousness. It seems obvious that the obligations of their employment had put these employees in a position where the consequences of blacking out were markedly more dangerous than if they had not been so employed. [Larson, *supra* at 9-3, 9-4.]

Consistent with Larson, the leading Michigan treatise on worker's compensation, Welch, Workers' Compensation in Michigan: Law & Practice, § 4.16, p 4-13, states:

> Even a truly idiopathic fall would probably be compensable if the worker fell into a moving machine. Under *Ledbetter*, whether a level-floor fall is compensable does not depend on whether the cause of the employee's fall is known. The test is whether the employment *increased the risk of injury*. Thus, if the employment did not cause the worker to fall and did not increase the dangers encountered in falling, the injury is not compensable. On the other hand, if the work caused the fall *or* increased the dangers involved in falling, the injury can be said to have arisen out of and in the course of the employment and is compensable. *See McClain v Chrysler Corp*, 138 Mich App 723, 360 NW2d 284 (1984)." [Emphasis in original.]

The cases before us are analogous to those in which an employee suffers greater injuries because the collapse occurs while standing on a ladder or near a piece of machinery. Driving a vehicle for their employers increased the level of risk involved in Hill and Frazzini's diabetic seizures and loss of consciousness. Further, both sustained injuries more severe than those they would suffer had they simply blacked out while standing on a level floor at work. In sum, their disabling or aggravated injuries were directly related to the vehicular accidents rather than to diabetes, even though the diabetes caused the accidents to occur.

We disagree with the WCAC's reasoning that because Hill and Frazzini's employment exposed them to no more than "everyday" driving risks, they cannot recover worker's compensation for their injuries from the vehicular accidents. That conclusion not only

ignores the fact that driving increased the risks involved in their seizures, but it ignores Larson's reasoning and that of our sister states that an employee's injury arises out of his employment if the obligations of employment placed him "in a position where the consequences of blacking out were markedly more dangerous than if they had not been so employed." *Larson, supra* at 9-4. Thus, many "everyday" activities discharged in the course of employment may result in a compensable injury, even if the accident is triggered by an idiopathic condition. For example, driving an automobile, using a knife in the kitchen, or swimming may well be "common" activities; yet, if a plaintiff cab driver, butcher, or lifeguard lost consciousness while driving a cab, carving meat, or saving a swimmer, respectively, and suffered aggravated injuries as a result, the plaintiff should not be denied benefits merely because the plaintiff engaged in an activity that could be considered common. Because the activity required by their employment placed them in a position of increased risk or aggravated their injuries, the injuries would be compensable even if an idiopathic condition caused them to lose consciousness.

Here, it does not appear that Hill and Frazzini's employment triggered their loss of consciousness, which, in turn, directly precipitated the vehicular accidents. Rather, their personal or idiopathic condition, their diabetic seizures, caused the accidents. Nonetheless, we hold that if Hill and Frazzini drove the vehicles for job-related[6] purposes and if having a

---

[6] We must remand for this determination in *Hill*, but not in *Frazzini*. The magistrate did not address the separate issue whether Hill was acting in the course of his employment when the vehicular accident occurred because the magistrate determined that plaintiff's injuries did not "arise

diabetic seizure while driving aggravated or otherwise increased their injuries, then those aggravated injuries directly caused by driving the vehicles are compensable under the Worker's Disability Compensation Act, MCL 418.301(1). As long as plaintiffs prove that the injuries for which they seek compensation are those resulting from the work-related vehicular accident rather than from the idiopathic condition, worker's compensation for those injuries are recoverable.

We reverse and remand *Hill* to the magistrate for further findings of fact. In *Frazzini*, we reverse and remand to the WCAC for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

out of the course of plaintiff's employment," i.e., the accident was not caused by plaintiff's employment. However, in *Frazzini*, the magistrate found that Frazzini was driving the vehicle in the course of his employment.